[No. 13322. Department One. — June 10, 1891.]

## GEORGE GERLACH, APPELLANT, *v.* WILLIAM J. TURNER, RESPONDENT.

APPEAL — REVIEW OF NONSUIT — ERROR OF LAW — SPECIFICATION IN NEW-TRIAL STATEMENT. — A nonsuit may be reviewed as an error of law, if excepted to and specified as such in the statement on motion for new trial.

PHYSICIANS — ACTION FOR MEDICAL SERVICES — HUSBAND AND WIFE — INVALID DIVORCE FROM FORMER WIFE — EVIDENCE — HEARSAY — NONSUIT. — In an action against a husband for medical services rendered to his wife, where it appears that the parties had been regularly married, and for a number of years afterward lived together as husband and wife, until they learned that the divorce of the husband from his former wife was invalid, but the only evidence as to the divorce was hearsay, called out on cross-examination, the conclusion that the parties were in fact husband and wife is not overcome, and the granting of a nonsuit is erroneous.

ID. — SERVICES RENDERED TO REPUTED WIFE — LIABILITY OF REPUTED HUSBAND. — A party calling a physician to attend a person whom he represents to be his wife is liable therefor, and the fact that the parties are not in fact legally married does not release him from the obligation to pay for the physician's services.

ID. — ESTOPPEL BY CONDUCT. — Where the conduct of the party calling the physician was such as to amount to an explicit representation that he

was her husband, he is estopped from asserting its falsity after the phy-
sician has rendered services on the faith of such representation.

ID. — NOTICE TO PHYSICIAN OF INVALID MARRIAGE — CONTINUANCE OF EM-
PLOYMENT. — The fact that the physician was informed toward the last
of his visits, by both the reputed husband and the patient, that they
were not married, does not release the reputed husband from his lia-
bility, where he fails to plainly and unequivocally put an end to the
employment at the time he informed the physician of his true relation
toward the patient.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco, and from an order
denying a new trial.

The facts are stated in the opinion of the court.

*A. P. Needles,* for Appellant.

The evidence does not show that the decedent ever
abandoned defendant, or that plaintiff and decedent ever
lived separate by agreement, in the sense of section 175
of the Civil Code, as construed in *Loring* v. *Stuart,* 79
Cal. 200, and *Heney* v. *Sargent,* 54 Cal. 397. A party
holding himself out to the world to be the husband of a
woman, even though they were never married, is liable
for her debts to the same extent and in all respects as a
husband. (1 Parsons on Contracts, 6th ed., secs. 354,
363, notes; *Munro* v. *Chemant,* 4 Camp. 214; *Ryan* v.
*Sams,* 12 Q. B. 459.) And this rule of liability holds
good, even though the party giving credit to or perform-
ing services for the reputed wife knew the parties to
be unmarried. ( *Watson* v. *Threlkeld,* 2 Esp. 637; *Robin-
son* v. *Mahon,* 1 Camp. 245; *Blades* v. *Exer,* 9 Barn. & C.
167.) Such a party is conclusively estopped from deny-
ing his liability. (Code Civ. Proc., sec. 1962, subd. 3;
Herman on Estoppel, sec. 330.) A husband is indis-
putably liable for his wife's necessaries; such debts are
his own, however incurred. (Civ. Code, sec. 175; Story
on Contracts, 5th ed., secs. 156–161; Bishop on Con-
tracts, enlarged ed., secs. 231, 232, 237, 238; Greenl. Ev.,

14th ed., sec. 108; *Flynn* v. *Messenger*, 28 Minn. 208; 41 Am. Rep. 279; *Webber* v. *Spannbake*, 2 Redf. 259; Reeve on Domestic Relations, 3d ed., 111–122; Stewart on Marriage and Divorce, sec. 180, subd. 4; 2 Lawson's Rights and Remedies, sec. 723; Bishop on Marriage and Divorce, 4th ed., sec. 554; Baylies's Questions and Answers, secs. 19, 20.) That they are living apart makes no difference, unless they so live by stipulated agreement (Civ. Code, secs. 159, 175; Bishop on Marriage and Divorce, 4th ed., sec. 556, note 4; *Heney* v. *Sargent*, 54 Cal. 397), even if plaintiff knew of it. (*Ruddock* v. *Marsh*, 1 Hurl. & N. 601.) Necessaries include medical services. (Stewart on Marriage and Divorce, sec. 180, subd. 3; Bishop on Marriage and Divorce, sec. 554; 2 Lawson's Rights and Remedies, sec. 722.) So for medical services rendered the family, the husband, as a rule, is liable (*Span* v. *Mercer*, 8 Neb. 358; *Webber* v. *Spannbake*, 2 Redf. 259; *Potter* v. *Virgil*, 67 Barb. 579), though the items were charged to the wife. (*Furlong* v. *Hysom*, 35 Me. 333.) It is the duty of a husband to maintain his wife, and her ability to support herself from her separate property does not discharge him from this duty. His liability still subsists, although he be poor and she wealthy. (Reeve on Domestic Relations, 3 ed., pp. 81, 82; *Dodge* v. *Knowles*, 114 U. S. 430; *Cropsey* v. *McKenney*, 30 Barb. 48.) The only true principle upon which to ground the liability of the husband in such a case as this is on the ground that the husband is liable for his wife's necessaries furnished her, regardless of agency, the obligation being imposed upon him by virtue of the marriage relation. (See Story on Contracts, 5th ed., secs. 156–161; Bishop on Contracts, enlarged ed., secs. 231, 232, 237, 238; Greenl. Ev., 14th ed., sec. 108.) The fact that the plaintiff previously sued the decedent for the same debt, and verified his complaint, cannot avail the defendant, or injure the plaintiff's cause. (*Fleming* v. *Hawley*, 65 Cal. 492; *Kamm* v. *Bank of California*, 74 Cal. 191.)

*A. N. Drown,* for Respondent.

The sick woman and respondent had not sustained to each other the relation of husband and wife for two years prior to the former's illness, and during this time they had had nothing to do with each other, except that she had on occasion worked for him as housekeeper on his ranch for stipulated wages. The duties of the wife, as wife, form the consideration for the husband's liability for her maintenance; and these duties not having been performed, her contracts for necessaries will not bind him. (*Brown* v. *Mudgett,* 40 Vt. 71; *Sturtevant* v. *Starin,* 19 Wis. 268; *Oinson* v. *Heritage,* 45 Ind. 75.) It is only when a husband "neglects to make adequate provision for the support of his wife," that any other person may, in good faith, supply her with articles necessary for her support, and recover the reasonable value thereof from the husband. (Civ. Code, sec. 174; *Crittendon* v. *Schermerhorn,* 39 Mich. 661, 664; 33 Am. Rep. 40; *Rea* v. *Durkee,* 25 Ill. 506; *Woodward* v. *Barnes,* 46 Vt. 334; 14 Am. Rep. 626.) The respondent and the sick woman were living separate by agreement, and the respondent had agreed to and arranged for her permanent and sufficient support, and therefore the respondent is not bound to pay any bills she may have contracted as his agent. (Schouler on Domestic Relations, 3d ed., secs. 61, 66, 68; 1 Parsons on Contracts, 7th ed., p. 362; Civ. Code, sec. 175.) Even during cohabitation the implied agency of the wife arises only in case the husband has failed in his duty; and it is limited to those whose dealings have been already recognized by the husband, and who, therefore, ought to have notice of revocation. (Schouler on Domestic Relations, 3d ed., sec. 70; *Rea* v. *Durkee,* 25 Ill. 506; *Cany* v. *Patton,* 2 Ashm. 144, 145.) The second marriage having been contracted by the respondent during the life of a former wife, known to the respondent to be living at the time of this marriage, and both before and after it, and they never having been judicially separated,

the second marriage was illegal and void from the beginning. (Civ. Code, sec. 61; 1 Bishop on Marriage and Divorce, 6th ed., secs. 299, 300; *Graham* v. *Bennett*, 2 Cal. 503, 506.) The right of the wife to bind the husband for necessaries rests upon the ordinary principle of agency. (*Benjamin* v. *Benjamin*, 15 Conn. 347; 39 Am. Dec. 384; *Tuttle* v. *Hoag*, 46 Mo. 43; 2 Am. Rep. 481; *Sawyer* v. *Cutting*, 23 Vt. 490; *Savage* v. *Davis*, 18 Wis. 613; *Butts* v. *Newton*, 29 Wis. 637.) Even had the sick woman been respondent's lawful wife, she could have contracted exactly like a *feme sole*, both as to the employment of appellant and as to paying him for his services. (Civ. Code, sec. 1556; *Wood* v. *Orford*, 52 Cal. 412; *Marlow* v. *Barlew*, 53 Cal. 459; *Brickell* v. *Batchelder*, 62 Cal. 639; *Goad* v. *Moulton*, 67 Cal. 536.) And her property alone is subject to her debts, whether contracted before or after marriage. (Civ. Code, secs. 167, 171; *Greiner* v. *Greiner*, 58 Cal. 119.) If the credit is given to the wife and not to the husband, the latter is not liable. (*Tuttle* v. *Hoag*, 46 Mo. 42; 2 Am. Rep. 481; *Mitchell* v. *Treanor*, 11 Ga. 324; 56 Am. Dec. 421; *Pearson* v. *Darrington*, 32 Ala. 243, 244.) If the charge is against the wife, it proves *prima facie* that the credit was given to her. (*Pearson* v. *Darrington*, 32 Ala. 243.) The respondent is not estopped from denying his liability in this action, in view of the proofs. Estoppels must be mutual, and bind both parties, or neither. (*Schuhman* v. *Garratt*, 16 Cal. 100; *Holden* v. *Andrews*, 38 Cal. 123.) A party cannot rely upon an estoppel contrary to his own admissions and acts. (*Holden* v. *Andrews*, 38 Cal. 124.) An estoppel is waived by introducing evidence as to the truth of the matters upon which the estoppel rested. (*Megerle* v. *Ashe*, 33 Cal. 75.) Estoppel can only exist where there has been a deliberate intention on the part of the one sought to be estopped to lead another to believe a particular thing true, and where that other has believed in, been influenced by, and acted upon the fact from which the es-

toppel is claimed to proceed. (Code Civ. Proc., sec. 1962, subd. 3; *Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 367, 368; *Davis* v. *Davis*, 26 Cal. 40; 85 Am. Dec. 157; *Franklin* v. *Dorland*, 28 Cal. 175, 178; 87 Am. Dec. 111.)

BEATTY, C. J. — This is an action to recover $850 for medical services alleged to have been rendered at the special instance and request of the defendant in attending his wife, or reputed wife, Mary J. Turner, during her last illness.

In a former action against the administrator of Mary J. Turner for the value of the same services, the plaintiff was defeated by proof of her marriage to this defendant, and of an employment by him; from which it followed that he, and not her estate, was liable for the demand. (*Gerlach* v. *Terry*, 75 Cal. 290.)

Thereupon this action was commenced, in which the plaintiff has been nonsuited upon the ground that Mary J. Turner was not the wife of defendant, although so reputed, and that plaintiff's services were rendered at her request, and solely upon the faith of her promise to pay for them out of her separate estate. In other words, the plaintiff has lost his suit this time because, in the opinion of the superior court, he did not prove a marriage or an employment by the reputed husband, while he lost it before, because such marriage and employment were proved. Certainly this is a hard case; but it is one that is legally possible. The defendant, not having been a party to the first suit, is not estopped by the decision therein made that he was the husband of Mary J. Turner, and contracted with the plaintiff; and if in this suit the contrary appears, the plaintiff cannot claim to recover merely because in the former action the representative of Mary J. Turner succeeded in evading her just obligation by the false pretense that the defendant, as her husband, was the party bound for the debt.

It will be necessary, therefore, in order to determine whether the nonsuit was properly granted, to confine our attention exclusively to the evidence produced by the plaintiff on the trial of this action.

Before considering the evidence, however, we will notice briefly a preliminary objection of counsel for the respondent, who contends, as we understand him, that the appellant has not specified the ruling of the court granting the motion for a nonsuit as an error of law, and consequently that it cannot be reviewed. (*Schroeder* v. *Schmidt*, 74 Cal. 460.) But in this contention counsel is evidently mistaken, for in fact the statement of the case not only shows that plaintiff duly and in time excepted to the order granting a nonsuit, but also distinctly specifies the ruling as an error of law, in both of which particulars it totally differs from the record in *Schroeder* v. *Schmidt*, 74 Cal. 460.

The question is therefore properly presented whether upon the evidence a nonsuit should have been granted.

The evidence shows that in 1872 a clergyman, in pursuance of a regular license, performed the ceremony of marriage between defendant and Mary J. Mason, afterwards and until her death known as Mary J. Turner. But there was some testimony — hearsay and incompetent, as it appears to us, but admitted without objection — that at the date of this supposed marriage defendant had a wife living, from whom he erroneously supposed himself to have been divorced; and it was upon the assumption of the truth and sufficiency of this testimony that the judge of the superior court held that he had never been the husband of Mary J. Mason.

But it appears that for about eight years after the marriage ceremony they both believed themselves to be husband and wife, and so conducted themselves towards each other and before the world. At the end of that time the defendant testifies that he discovered that no decree divorcing him from his former wife had been entered; that he

communicated this discovery to Mary J. Turner; that they took advice of counsel, and finding they were really not husband and wife, they ceased to live together in that relation, and he gave her the sum of six thousand dollars for her support. It appears, however, that although they may have put an end to their conjugal relations as between themselves, they still continued, for the purpose of avoiding scandal and publicity, to hold themselves out to the world as husband and wife. They lived on his ranch in Sonoma County, where, he says, he paid her to act as his housekeeper, but she retained and was known by the name of Mrs. Turner, and when, in November, 1882, she was attacked by the fatal illness which occasioned the employment of the plaintiff, the defendant came with her to San Francisco, took her to the house of Mrs. Beanston, her daughter by a former marriage, and himself called the plaintiff to see her.

The plaintiff wrote down the name and address of the house where he was directed to call, writing Vincent by mistake for Beanston, and without waiting to inquire by whom he was to be paid for his services, commenced and continued his attendance. For a whole month — from November 3d to December 3d — he noted his daily visits in his account-book under the name of Vincent; after that, under the name of Mrs. Turner. He says that he did not at any time feel any concern about his bill. His patient was in the house of a daughter and constantly attended by the defendant, who demeaned himself as her husband, and spoke of her to the plaintiff and to the nurse and others as his wife. He supposed he would be paid, of course, and never thought of inquiring by whom. He says it would have made no difference who came for him or sent for him, he would have rendered his services just the same. He seems, indeed, during his long attendance, and it is much to his credit, to have been intent only upon the relief of his patient, and wholly oblivious to the collection of his fees.

During the latter part of Mrs. Turner's illness — from three to six weeks before her death—the plaintiff was informed of the peculiar relation between her and the defendant, and was at the same time informed that she had plenty of means of her own to pay him for his services.    This information seems to have been volunteered by both the defendant and by Mrs. Turner, and not to have been elicited by any inquiries from the plaintiff, who continued his attendance as before.

After Mrs. Turner's death the defendant claimed a portion of her property as heir, and actually applied for letters of administration on her estate, describing himself in his sworn petition as her surviving husband. He abandoned his application, however, when he found himself opposed by her son, Mr. Terry, who received the appointment as administrator.

The plaintiff, having been convinced, apparently, that Mrs. Turner's estate was liable to him for his services, presented his claim to her administrator, and upon its rejection sued Terry, with the result above stated; i. e., that he was defeated on the ground that her husband, this defendant, owed the debt, and that her promise to pay it was invalid.

Upon this state of facts we think the superior court erred in granting a nonsuit, for two reasons.

1. There was abundant evidence of a marriage between the defendant and Mrs. Turner, and nothing to rebut the conclusion that they were in fact husband and wife, except hearsay evidence that he had a former wife living at the date of their marriage.    And this hearsay evidence was not put in by the plaintiff, but was called out on cross-examination, and allowed in the absence of any objection by the plaintiff, who might properly have objected that it was not cross-examination, but a part of the defendant's own case.

2. Even if it had been clearly proven by competent evidence that defendant was not the husband of Mrs.

Turner, he is still liable if he employed the plaintiff to attend her; and the evidence shows that he did. A man may employ a physician to attend a total stranger, and *a fortiori* one whom he chooses to have known as his wife.

And, besides, the defendant's conduct — at least up to the time when Mrs. Turner, towards the last of her sickness, promised plaintiff that she would pay him — was such as to amount to an explicit representation that he was her husband, and after the plaintiff has rendered services on the faith of such representation, defendant is estopped to assert its falsity.

We are not unmindful of the claim that plaintiff's own testimony shows that he did not rely on the defendant. But we do not think his testimony shows any such thing. He expected confidently to be paid, and he simply did not consider the legal aspects of his contract. He was entitled to rely on the defendant, and must be presumed to have done so. He may not have a right to invoke this principle of estoppel as to the value of services rendered after he was informed that defendant was not Mrs. Turner's husband, but even as to these services the defendant is liable if he originally employed the plaintiff, and did not plainly and unequivocally put an end to that employment at the time he informed him of his true relation to the woman he called his wife.

The judgment and order appealed from are reversed.

HARRISON, J., and GAROUTTE, J., concurred.