BENTON, Respondent, vs. STADLER, imp., Appellant.

*January 13—February 10, 1931.*

For the appellant the cause was submitted on the brief of *Keller, Keller & O'Leary* of Appleton.

For the respondent there was a brief by *Benton, Bosser & Tuttrup* of Appleton, and oral argument by *Roger R. Tuttrup*.

OWEN, J.   Susan Stadler is a single woman more than twenty-one years of age.   She lived with her father.   Although she occasionally had employment from which she earned small sums, it does not appear that her earnings were sufficient to support her.   At any rate, she paid her father nothing for her maintenance.

On March 10, 1927, she called at the office of plaintiff, a practicing physician in the city of Appleton, for professional services.   The plaintiff discovered that she was suffering from appendicitis and told her that an operation was necessary.   She then told the doctor to call her father, the defendant Anton Stadler, and advise him of the situation.   The plaintiff got into telephone communication with the father, and the father asked him if he could not give Susan some

medicine for the pain. Plaintiff replied that he could give her something for the pain, but that he would not take the responsibility for that. He gave her some medicine and she left the office. During the afternoon of the same day the defendant Anton Stadler called the plaintiff on the phone and told him to call at the house, take Susan to the hospital and take care of her. Plaintiff called at the house, removed Susan to the hospital, and performed an appendectomy operation. He also removed an ovarian cyst which he discovered while Susan was on the operating table. He charged $151 for the operation. He entered it on his books as a charge against Susan. He sent her numerous bills addressed to her at her father's house, without response.

This action was brought against the father and daughter to recover the amount of the plaintiff's charge. The question is whether the father is liable for the doctor's services. It is not contended that the father is liable for the services because of the family relation. It is conceded that if he be liable at all it must be upon contract, expressed or implied. The father concedes that he called the plaintiff during the afternoon and told him to come and get Susan, take her to the hospital and take care of her. He contends, however, that he did this merely as the agent of Susan. He does not claim that he told the plaintiff that he was acting merely as Susan's agent or that he was communicating with the plaintiff at Susan's request. The plaintiff claims that in performing the services he extended credit to the father. The fact that he charged the account upon his books to the daughter is a circumstance which not only does not corroborate the claim but may be urged in dispute thereof. However, it is not conclusive against the claim of plaintiff.

We have, then, a situation where the father called the plaintiff, told him to take the daughter to the hospital and take care of her, and the plaintiff responding to the request or the direction. There was nothing to indicate to the plaint-

iff that the father was acting merely as Susan's agent. All of the facts and circumstances indicate that, although Susan had arrived at her majority, she was still under the care and protection of her father, from whom she derived her support in a considerable measure at least. She would not consent to the operation until the plaintiff communicated with her father. Upon the first communication the father vetoed the operation. This was suggestive of the authority which the father exercised with reference to the daughter's affairs. When the father called the plaintiff in the afternoon and told him to come and get the daughter and take her to the hospital, there was nothing to indicate to the plaintiff that the father was acting merely as the agent of his daughter. The prior experience of the same day warranted the plaintiff in believing that the father was acting upon his own responsibility and in pursuance of parental authority. The father was entitled to credit, while the daughter was not financially responsible. More than this, the defendant testified: "I intended to pay him all the time. He knew it because I told him so. But after he told me what he done I wouldn't pay him a cent." It appears that the father became angry because the plaintiff removed the ovarian cyst, although it appears from the testimony of the plaintiff that it would have been unethical for him not to have done so under the circumstances.

A review of the evidence supports the finding of the court that the father called upon the plaintiff to perform the operation on his daughter, that in doing so plaintiff extended credit to the father, and that the father assumed responsibility for the services rendered by the plaintiff. It is a general proposition supported by many authorities that he who orders a physician to come to his home to treat a member of his family becomes responsible for the payment of the physician's services unless he makes it known to the physician that he disavows responsibility. *Best v. McAuslan,* 27 R. I. 107, 60 Atl. 774; *Bradley v. Dodge,* 45 How. Pr. (N. Y.) 57;

540

*Clark v. Waterman,* 7 Vt. 76; *Gerlach v. Turner,* 89 Cal. 446, 26 Pac. 870; *Grattop v. Rowheder,* 1 Neb. (Unofficial) 660, 95 N. W. 679; *Hall v. Allen,* 46 Colo. 355, 104 Pac. 489; *Hentig v. Kernke,* 25 Kan. 559; *Succession of Levitan,* 143 La. 1025, 79 South. 829; *Morrell v. Lawrence,* 203 Mo. 363, 101 S. W. 571; *Reinschmidt v. Dorough,* 14 Ga. App. 409, 81 S. E. 252; *Till Bros. v. Redus,* 79 Miss. 125, 29 South. 822; *Union Pac. R. Co. v. Winterbotham,* 52 Kan. 433, 34 Pac. 1052; *Freeman v. Junge Baking Co.* 126 Mo. App. 124, 103 S. W. 565.

*By the Court.*—Judgment affirmed.