ESTATE OF BLOOMER: BLOOMER, Executor, Appellant, vs. BENTON and others, Respondents.

*December 6, 1957—January 7, 1958.*

624

For the appellant there was a brief and oral argument by *Joseph Witmer* of Appleton.

For the respondents there was a brief by *Benton, Bosser, Fulton, Menn & Nehs* of Appleton, *pro se,* and oral argument by *David L. Fulton.*

FAIRCHILD, J.

1. *Bill of particulars.* In December, 1956, the executor moved that the claim be made more definite and certain and that a bill of particulars be presented. The motion was denied and the claim set for hearing on February 14, 1957. The claim contains 16 typewritten pages in which the items of service and time spent in rendering each item are set forth in chronological order. The executor asserted that the services rendered to the partnership should be separately designated and that the various items should be grouped according to the particular matter of business being worked upon. At the hearing on the motion claimants suggested that the executor adversely examine Mr. Bosser before trial, but the executor did not do so. We think the trial court did not abuse its discretion in denying the motion. We are also of the opinion that had the executor proceeded by adverse examination before trial, as suggested, the points at issue could have been tried out in considerably less time and with more clarity.

2. *Sufficiency of evidence.* Mr. Bosser testified that claimants had a system of recording services under which entries are made daily on ledger sheets kept separately for each client, stating the type of service rendered and the time spent. Mr. Bosser produced the sheets kept under Mr. Bloomer's name, testified generally that he had rendered the services set forth and that he had dictated the entries. They were

received in evidence. They were admissible and were *prima facie* evidence of the furnishing of the services. Sec. 327.24, Stats. Mr. Keller's testimony was a sufficient basis for computing the reasonable value by multiplying the number of hours spent by $10.

Accordingly it is unnecessary to decide whether the bar association schedules, admitted without objection, would support the finding. They would not require a different finding. Neither is it necessary to decide whether the judge's own knowledge as a lawyer is a basis for determining the value of a lawyer's services as stated in *Will of Gudde* (1951), 260 Wis. 79, 86, 49 N. W. (2d) 906. See also *Larscheid v. Kittell* (1910), 142 Wis. 172, 177, 125 N. W. 442, and *Rubekeil v. Bowman* (1920), 171 Wis. 128, 176 N. W. 854.

3. *Work done on the affairs of Mrs. Bloomer.* Some of the services were rendered in preparing Mrs. Bloomer's will and in connection with her income taxes. Under the circumstances, it is not presumed that Mr. Bloomer acted only as her agent in requesting that these services be rendered. Thus his request gave rise to his liability to pay. *Benton v. Stadler* (1931), 203 Wis. 536, 234 N. W. 739.

4. *Work done on loans.* Some of the services were rendered in examining abstracts on property of people borrowing money from Mr. Bloomer and in preparing the mortgages and other papers for execution by the borrowers. The executor argues that the borrowers should have paid for these services. While borrowers often agree with a lender that they will pay the fees of the lender's attorney, the services of the lender's attorney are nevertheless for his protection. There is no evidence in this case either of an agreement by the borrower to pay the fee or of an agreement by the attorney to look only to the borrower for payment.

5. *Statute of limitations.* As amended, the claim covers six years preceding Mr. Bloomer's death. The executor argues

that items more than two years before his death are barred. Sec. 330.21 (5), Stats., bars after two years, "Any action to recover unpaid salary, wages, or other compensation for personal services, except fees for professional services." The executor asserts that the exception of fees for professional services is unconstitutional and that action for such fees is barred after two years. In *Estate of Zeimet* (1951), 259 Wis. 619, 49 N. W. (2d) 924, it was held that the exception would be severable if invalid and would not render the two-year limitation invalid. Thus the question of validity of the exemption was reserved.

In one recent decision there is language which suggests that the only cause of action barred by sec. 330.21 (5), Stats., may be those for compensation for services rendered by employee to employer. "Under the statute referred to, in view of all of the circumstances in this particular case, service would mean work done by one person at the request of another and would refer to a relationship of master and servant." *Estate of Fredericksen* (1956), 273 Wis. 479, 480, 78 N. W. (2d) 878. In other opinions it seems to have been assumed that it was immaterial whether the relationship was that of employer and employee. See *Mead v. Ringling* (1954), 266 Wis. 523, 64 N. W. (2d) 222, 65 N. W. (2d) 35, and *Estate of Schaefer* (1952), 261 Wis. 431, 53 N. W. (2d) 427. If the statute barred only those claims for compensation arising out of employment, the exception of fees for professional services would have accomplished nothing. For the background of sec. 330.21 (5), see ch. 574, Laws of 1945, Resolution No. 25, S., 1945 session; 34 Op. Atty. Gen. 139; *Republic Pictures Corp. v. Kappler* (8th Cir.), October 29, 1945, 151 Fed. (2d) 543, affirmed February 4, 1946, 327 U. S. 757, 66 Sup. Ct. 523, 90 L. Ed. 991; Bill No. 532, S., 1947 session.

Whatever the final interpretation of sec. 330.21 (5), Stats., we conclude that the legislature has the power to impose

different periods of limitation on causes of action for compensation of employees, for compensation of nonemployees for nonprofessional services, and for fees for professional services. A statute is presumed to be constitutional. *State v. Kerndt* (1956), 274 Wis. 113, 115, 79 N. W. (2d) 113. Periods of limitation are subject to a relatively large degree of legislative control. *Chase Securities Corp. v. Donaldson* (1945), 325 U. S. 304, 314, 65 Sup. Ct. 1137, 89 L. Ed. 1628. The legislature may have considered that because wages, salaries, and other forms of compensation such as commissions and bonuses paid to employees are paid regularly at frequent intervals, a valid claim for such compensation is likely to be sued on if unpaid within a short period of time, while valid bills for fees for professional services normally are more often permitted to run for a longer period without suit. If it be eventually determined that the legislature placed the claims of independent contractors for nonprofessional services in the same class for this purpose as wage claims, this court cannot say that the legislature exceeded its powers. All these claims have in common the fact that they arise out of personal services rendered by claimant, but it cannot be denied that they differ considerably in the promptness of payment, customary method of collection, and the ordinary way in which the amount due is determined. There being some conceivable facts which may be thought to justify difference in treatment, it is not for the court to say whether the choice of two years for barring one class of claims and of six years for another is the wisest or most desirable choice. There being such basis for difference in treatment, an alleged debtor cannot assert that he is denied equal protection of the law because after two years the law protects him from one type of claim, but not from another.

We have examined a number of decisions involving the validity of statutes of limitation. For the most part the question was whether the period allowed was so unreasonably

short as to deprive persons of property rights. The only cases we have been able to find where discrimination between causes of action has rendered a statute of limitation invalid have related to those statutes which discriminated against rights arising under federal law. *Republic Pictures Corp. v. Kappler, supra; Rockton & Rion R. R. v. Davis* (4th Cir. 1946), 159 Fed. (2d) 291; *Caldwell v. Alabama Dry Dock & Shipbuilding Co.* (5th Cir. 1947), 161 Fed. (2d) 83.

We note that for many years, apparently without challenge, the Civil Code of Louisiana, Vol. 2 (2d ed.), pp. 960, 972, has imposed different periods of prescription (somewhat analogous to periods of limitation) on different classes of claims for services. Art. 3534 imposes one year on claims of "masters and instructors in the arts and sciences, for lessons which they give by the month" while art. 3538 imposes three years on claims of "teachers of the sciences who give lessons by the year or quarter." The one-year period also applies to actions of "workmen, laborers, and servants, for the payment of their wages," and the three-year period to actions for the "salary of overseers, clerks, secretaries" and of "physicians, surgeons, and apothecaries for visits, operations, and medicines."

We conclude that sec. 330.21 (5), Stats., does not bar the claim.

6. *Work done for the partnership.* The executor asserts that some of the services charged against John Bloomer were performed for the Bloomer partnership and that there can be no recovery in the estate because the partnership assets are sufficient to pay all partnership debts.

The trial court made a finding that none of the items are obligations of the partnership "in so far as affects the said claimants." To the contrary, however, some of the services were rendered for the benefit of the partnership, as an incident of its business, and at the request of deceased, who was a partner. No one has asserted that he lacked authority to

act. The obligation to pay for the services was a partnership obligation. Sec. 123.06, Stats. While a partner may enter into a separate obligation to perform a partnership contract (sec. 123.12) there is no evidence that Mr. Bloomer did so.

Thus we reach the question whether, when a partner dies, a claimant to whom the partnership is indebted upon contract may file a claim in the estate of the deceased partner where the partnership is not shown to be insolvent. There is a split of authority upon the proper rule to be followed. Anno. 61 A. L. R. 1410. In 40 Am. Jur., Partnership, p. 354, sec. 320, it is asserted that under the better rule, a creditor may proceed against the estate of a deceased partner irrespective of whether the surviving partners are solvent.

Sec. 313.12, Stats., provides in part that, "When two or more persons shall be indebted on any joint contract . . . and either of them shall die his estate shall be liable therefor, and the claim may be allowed by the court as if the contract had been joint and several . . . and the other parties to such joint contract may be compelled to contribute or to pay the same if they would have been liable to do so upon payment thereof by the deceased."

This statute was held applicable to partnership debts in *W. E. Smith Lumber Co. v. Estate of Fitzhugh* (1918), 167 Wis. 355, 167 N. W. 455. Courts of several other states have reached similar results under like statutes. *Hawkes v. First Nat. Bank* (1928), 264 Mass. 545, 163 N. E. 249; *McLain & Badgett v. Carson* (1842), 4 Ark. 164; *Maxey v. Averill* (1841), 41 Ky. 107.

New York follows the rule that a partnership creditor does not have a right to proceed against the estate of a deceased partner, without showing the insolvency of any partner who may survive. New York has adopted the Model Joint Obligations Act, as has Wisconsin. Our sec. 113.06, Stats., provides that, "On the death of a joint obligor in contract his executor or administrator (or estate) shall be bound as such

jointly and severally with the surviving obligor or obligors." The corresponding section of the New York law was held inapplicable to partnership obligations in *State Bank of Binghamton v. Bache* (1935), 156 Misc. 503, 282 N. Y. Supp. 187.

We are urged to depart from the holding of the *Smith Lumber Co. Case,* and hold that unless the claimant can prove some degree of insufficiency if he sues the surviving partners, he can do no more than file a claim which is contingent upon such insufficiency. It is true that the facts there involved arose in 1909 before Wisconsin adopted the Uniform Partnership Act, ch. 123, Stats., and the Model Joint Obligations Act, ch. 113, Stats. We find nothing in these acts, however, which is necessarily in conflict with the holding of the *Smith Lumber Co. Case.*

On the contrary the Uniform Partnership Act contains the following entirely consistent provision: Sec. 123.31 (4), Stats., "The individual property of a deceased partner shall be liable for all obligations of the partnership incurred while he was a partner but subject to the prior payment of his separate debts." This section would give priority to separate debts if the estate were insufficient to pay both.

If it be better policy to follow the New York rule and to deem the references in sec. 313.12 and sec. 113.06, Stats., to joint indebtedness on contract inapplicable to partnership debts, this choice of policy almost forty years after the decision of the *Smith Lumber Co. Case* should be made by the legislature and not the court.

It should be noted that the authorities referred to deal with the particular situation of death of a partner, and the statutes, sec. 313.12 and sec. 113.06, deal with death of a joint obligor. Accordingly, this decision has no application to enforcement of partnership obligations under other circumstances.

*By the Court.*—Judgment affirmed.