WIENER, a member of the class of persons who have paid usurious charges to the defendant on behalf of himself and all others similarly situated, Appellant, v. J. C. PENNEY COMPANY, Respondent. [Case No. 41.]

TUCCELLI, individually and on behalf of all others similarly situated, Appellant, v. NELSON BROTHERS FURNITURE COMPANY, Respondent. [Case No. 42.]

MITCHELL, individually and on behalf of all others similarly situated, Appellant, v. GIMBEL BROTHERS, INC., Respondent. [Case No. 43.]

WIENER, a member of the class of persons who have paid usurious charges to the defendant on behalf of himself and all others similarly situated, Appellant, v. SEARS, ROEBUCK & COMPANY, Respondent. [Case No. 44.]

MATTHEWS, individually and on behalf of all others similarly situated, Appellant, v. BOSTON STORE, Respondent. [Case No. 45.]

MOYLAN, individually and on behalf of all others similarly situated, Appellant, v. SEARS, ROEBUCK & COMPANY, Respondent. [Case No. 46.]

LASIEWICZ, individually and on behalf of all other credit customers who paid defendant usurious charges, Appellant, v. NISS & SONS, INC., Respondent. [Case No. 47.]

DOUGLAS, individually and on behalf of all other credit customers who paid defendant usurious charges, Appellant, v. COMMUNITY STORES CORPORATION, Respondent. [Case No. 48.]

Nos. 41–48. Argued June 5, 1974.—Decided October 14, 1974.
(Also reported in 222 N. W. 2d 149.)

For the appellants there was a joint brief by *Warshafsky, Rotter & Tarnoff* of Milwaukee, attorneys for Michael Tuccelli, Robert Mitchell, James Matthews and Thomas Moylan; *Meldman & Kahn* of Milwaukee, attorneys for William Wiener; *Ted M. Warshafsky,* of

Milwaukee, and *Aram & Hartunian* and *Pressman & Hartunian* of Chicago, Illinois, of counsel; and oral argument by *Ted M. Warshafsky* and *Aram A. Hartunian*.

For the respondents there were joint briefs by *Foley & Lardner* of Milwaukee, attorneys for J. C. Penney Company, Inc., Gimbel Brothers, Inc., Nelson Bros. Furniture Co., and Niss & Sons, Inc.; *Quarles & Brady* of Milwaukee, attorneys for Sears, Roebuck & Co., Boston Store and Community Stores Corp.; *Isaksen, Werner, Lathrop & Heaney* of Madison, of counsel, for J. C. Penney Company, Inc.; and *Hoyt, Greene, Meissner & Walsh, S. C.,* of Milwaukee, of counsel, for Gimbel Brothers, Inc.; and oral argument by *James P. Brody* of Milwaukee for J. C. Penney Company, Inc., and Nelson Bros. Furniture Co.; and *John S. Holbrook, Jr.,* for Sears, Roebuck & Co., Boston Store and Community Stores Corp.

WILKIE, C. J.   One issue is presented by this consolidated appeal, to wit:

*Is sec. 138.06 (7), Stats., constitutional?*

Under sec. 138.06 (3), Stats., a borrower who pays usurious interest may recover all the interest, principal (up to $2,000), and charges paid on the loan or forbearance within two years of the date the action is commenced. The trial court held, however, and plaintiffs do not dispute on appeal, that sec. 138.06 (6) and (7) remove the right of pre-October 9, 1970, credit sale usury victims to recover penalties and to maintain any class actions. As plaintiffs' brief unequivocally concedes at page 14:

"These amendments effectively wrought two changes in the law *with respect to persons who were charged usurious interest rates on transactions prior to October 9, 1970* [emphasis in original]:

"(1) The measure of damages was changed to eliminate penalties;

"(2) Class actions were forbidden."

Thus, plaintiffs acknowledge that the procedure outlined in sec. 138.06 (7) for recovery of excess interest provides them their sole statutory recourse for pre-October 9, 1970, credit sale usury violations.

Plaintiffs do not contest the constitutionality of sec. 138.06 (6), Stats., which eliminated penalties and only allows recovery of excess interest. They do, however, argue that sec. 138.06 (7), which outlaws class actions, is unconstitutional in two respects: because it denies them equal protection of the laws in violation of the fourteenth amendment to the United States Constitution [5] and art. I, sec. 1 of the Wisconsin Constitution [6] and because it violates art. I, sec. 9 of the Wisconsin Constitution.[7]

A. *Equal Protection.*

Plaintiffs claim that the prohibition on class actions contained in sec. 138.06 (7), Stats., violates their right to the equal protection of the laws in two ways:

[5] Sec. I of the fourteenth amendment to the United States Constitution provides in part: ". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[6] Art. I, sec. 1, of the Wisconsin Constitution provides: ". . . All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed."

[7] Art. I, sec. 9, of the Wisconsin Constitution provides: ". . . Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

". . . First, it distinguishes one group of usury victims from all other persons having legal claims of various kinds and denies to that group the right to bring a class action. Second, while the amendment imposes this serious deprivation on the pre-*Penney* group, it does not do so to post-*Penney* usury victims."

Before evaluating these contentions it is first necessary to set forth the standard of review applicable to equal protection claims arising under the fourteenth amendment to the United States Constitution and art. I, sec. 1, of the Wisconsin Constitution. As this court has stated many times, both amendments guarantee the same individual rights and impose the same restrictions on the legislature.[8]

Legislation regulating economic and fiscal affairs enjoys a presumption of constitutionality. As stated in *Simanco, Inc. v. Department of Revenue:* [9]

"Only if a challenger can show that the classification is arbitrary and has no reasonable purpose or relationship to the facts or a justifiable and proper state policy will a legislative classification fall on the grounds of a denial of equal protection. *Dandridge v. Williams* (1970), 397 U. S. 471, 90 Sup. Ct. 1153, 25 L. Ed. 2d 491; *Morey v. Doud* (1957), 354 U. S. 457, 77 Sup. Ct. 1344, 1 L. Ed. 2d 1485; *Vanden Broek v. Reitz* (1971), 53 Wis. 2d 87, 191 N. W. 2d 913; *State ex rel. Schopf v. Schubert* (1970), 45 Wis. 2d 644, 173 N. W. 2d 673."

A presumption of constitutionality has been specifically accorded to classifications in the usury statutes. In *Country Motors v. Friendly Finance Corp.,*[10] upholding

[8] *Chicago & North Western Ry. v. La Follette* (1969), 43 Wis. 2d 631, 643, 169 N. W. 2d 441; *State ex rel. La Follette v. Reuter* (1967), 36 Wis. 2d 96, 110, 153 N. W. 2d 49; *State ex rel. Sonneborn v. Sylvester* (1965), 26 Wis. 2d 43, 49, 50, 132 N. W. 2d 249.

[9] (1973), 57 Wis. 2d 47, 57, 203 N. W. 2d 648.

[10] (1961), 13 Wis. 2d 475, 485, 109 N. W. 2d 137, quoting *State v. Neveau* (1941), 237 Wis. 85, 99, 294 N. W. 796, 296 N. W. 622.

the exclusion of corporations from certain protections under the usury law, the court said:

" '[T]he classification made by the legislature is presumed to be valid unless the court can say that no state of facts can reasonably be conceived that would sustain it.' "

In *State ex rel. Ford Hopkins Co. v. Mayor,*[11] as noted by plaintiffs, the court enumerated five standards pertaining to statutes attacked on equal protection grounds:

(1) All classifications must be based upon substantial distinctions which make one class really different from another.

(2) The classifications adopted must be germane to the purpose of the law.

(3) The classifications must not be based upon existing circumstances only. They must not be so constituted as to preclude additions to the numbers included within a class.

(4) To whatever class a law may apply, it must apply equally to each member thereof.

(5) The characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

However, in *State ex rel. La Follette v. Reuter*[12] the court held that before a statute will be held unconstitutional for violating these standards, the attacker must meet a very heavy burden of proof and persuasion:

". . . to declare an act of the legislature as to a classification violative of the equal-protection clause, it is first necessary to prove that the legislature has abused its discretion beyond a reasonable doubt."

[11] (1937), 226 Wis. 215, 222, 276 N. W. 311.
[12] (1967), 36 Wis. 2d 96, 111, 153 N. W. 2d 49.

Applying these principles to the case at hand, we are convinced that sec. 138.06 (7), Stats., is constitutional. This statute was passed at the urging of the governor during a special session of the legislature. In his message to the session,[13] the governor warned that this court's 1970 *Penney* decision exposed retailers across the state to potentially bankrupting liability from hundreds of thousands of penalty claims under the usury laws. Faced with this prospect, the legislature could reasonably have concluded that elimination of penalty claims and a prohibition on class actions were necessary to protect the

[13] Journal of the Senate (Special Session, 1972), April 19, 1972, pp. 9, 10. The governor said in part: "Another matter that I would ask you to consider in this session is of great and immediate economic consequence to our state and cannot wait until 1973 for resolution. . . .

"In October, 1970, the State Supreme Court found that the one and one-half percent monthly charge commonly used in revolving credit accounts was a violation of our usury law. This decision affected retailers throughout the state, as was evidenced by the fact that they promptly reduced their monthly charges to one percent a month. However, as you know, they will be permitted to resume the one and one-half percent charge next March 1 as a result of the passage of the Wisconsin Comprehensive Consumer Credit Act.

"There could be literally hundreds of small retailers in our state who are threatened with potential bankruptcy unless this Legislature intervenes. Under present law, the penalty for violation of the usury statute is the refunding of all interest paid, plus a refund of up to $2,000 of principal. If this penalty is applied to sales of goods on credit terms made prior to the Supreme Court decision, it would mean the return of every interest dollar and the refund of the entire purchase price on hundreds of thousands of accounts—while still allowing the customer to keep the merchandise. A recent study of 32 stores in 20 Wisconsin cities showed that every one of them would face bankruptcy should the full penalty be exacted. Projecting that result throughout the state, you can readily understand my concern as Chief Executive charged with responsibility for the healthy economy of the state in terms of taxes, jobs and business opportunities."

state economy.[14] It cannot be said, therefore, that this legislation serves no legitimate public purpose.

Plaintiffs argue, however, that to prohibit class actions for usury claims while continuing to permit class actions for other types of claims is a denial of equal protection. This argument overlooks the special circumstances surrounding passage of the bill which reveal a rational justification for this difference in treatment. Prior to *Penney,* this court had never ruled on the question as to whether the credit plan involved in that case violated the usury law.[15] The legislature might therefore have reasonably concluded that until *Penney* Wisconsin retailers offered their credit plans in good faith and therefore should not be subject to severe penalties.

These considerations also provide a rational justification for treating post- and pre-*Penney* usury victims differently. After the *Penney* decision was announced on October 9, 1970, all retailers in the state were effectively put on notice that the usury law applied to revolving charge accounts. Any further violations could not be considered in good faith, and thus the new legislation only limits liability for pre-October 9, 1970, claims. Contrary to plaintiffs' assertions, this court has frequently upheld reasonable classifications that are based on time,[16] and it cannot be said here that the judgment

[14] Penalty claims under the usury statutes are particularly severe. Moreover, even limited to the recovery of excess interest, class actions involving hundreds of thousands of claimants could be ruinous to many defendants both in terms of the ultimate judgment, as well as the costs of litigation, particularly the expense of complying with any extensive discovery orders.

[15] *See* 54 Op. Atty. Gen. (1965), 235, where, following a very lengthy discussion, the attorney general stated that there were no controlling Wisconsin judicial opinions on the subject.

[16] *See Jelinski v. Eggers* (1967), 34 Wis. 2d 85, 94, 148 N. W. 2d 750 (zoning ordinance constitutional which permits prior existing but prohibits future nonconforming uses); *Estate of*

of the legislature represented by this statute, was unreasonable.

We conclude, therefore, that sec. 138.06 (7), Stats., does not deny plaintiffs the equal protection of the laws.

B.  *Denial of a Remedy for Wrongs Contrary to Art. I, Sec. 9, Wisconsin Constitution.*

Plaintiffs argue that the prohibition on class actions contained in sec. 138.06 (7), Stats., violates art. I, sec. 9, of the Wisconsin Constitution, which provides:

"**Remedy for Wrongs.** SECTION 9. Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

Plaintiffs' basic contention is that, deprived of the ability to maintain a class action to recover excess interest, they are denied any meaningful remedy because the amount of excess interest due any one individual would be too small to justify litigation.

This argument overlooks both the nature of the rights guaranteed by art. I, sec. 9, and the nature of the remedy provided under sec. 138.06 (7), Stats. As this court pointed out in *Metzger v. Department of Taxation:* [17]

"Our court has consistently held that sec. 9, art. I of our constitution does not entitle Wisconsin litigants to the exact remedy they desire, but merely to their day in court. *New York Life Ins. Co. v. State* (1927), 192 Wis.

*Bloomer* (1958), 2 Wis. 2d 623, 631, 87 N. W. 2d 531 (debtor not denied equal protection where statute of limitations protects him from one type of claim but not another); *Werlein v. Milwaukee Electric Ry. & Transport Co.* (1954), 267 Wis. 392, 400, 66 N. W. 2d 185 ("statutory classifications based upon time are generally recognized as valid").

[17] (1967), 35 Wis. 2d 119, 129, 150 N. W. 2d 431.

404, 412, 211 N. W. 288, 212 N. W. 801. Under sec. 9, art. I, the legislature may impose reasonable limitations upon the remedies available to parties. *Hoffmann v. Milwaukee E. R. & L. Co.* (1906), 127 Wis. 76, 82, 83, 106 N. W. 808; *Neuhaus v. Clark County* (1961), 14 Wis. (2d), 222, 229, 111 N. W. (2d) 180".

In *Metzger* the court held that the circuit court had no authority to enjoin a department of taxation gift tax assessment where the taxpayer had not exhausted his administrative remedies. Similar to the argument plaintiffs have made in the case at bar, the taxpayer in *Metzger* had contended that the administrative procedures were so time-consuming, expensive, and inconvenient, they left him, in effect, no adequate remedy. The court rejected this contention, first stating:

"[S]ec. 9, art. I concludes with the phrase 'conformably to the laws.' In this case the procedure of which plaintiffs complain as violative of the constitutional section is not only 'conformably to the laws,' it is the law established by the legislature." [18]

and finally concluding:

"In the case at bar the legislature has provided the exclusive procedures by which the plaintiffs may have their day in court. Denying plaintiffs immediate injunctive relief in no way violates sec. 9, art. I of the Wisconsin constitution. If present procedures are inconvenient and unsuitable, the legislature is the proper forum in which to seek a change." [19]

Sec. 138.06 (7), Stats., provides that retail sellers *shall* refund excess interest charged before October 9, 1970, upon written individual demand. Plaintiffs complain that this procedure is inadequate, because obviously the sellers will resist the law. There is no indication in the record or in the briefs, however, that plaintiffs have availed

[18] *Id.* at page 128.
[19] *Id.* at page 130.

themselves of this procedure. Thus, we cannot accept their contention that this remedy is unreasonable. That retailers would flagrantly disregard the clear command of this law is something that cannot be taken for granted.

If the retail seller refuses to refund the excess, under sec. 138.06 (7), Stats., the claimant may sue for triple the amount due plus reasonable attorney's fees. This may not provide the remedy plaintiffs desire, but it is a "certain remedy," "conformably to the laws," and gives them their "day in court."

We conclude, therefore, that sec. 138.06 (7), Stats., does not violate art. I, sec. 9 of the Wisconsin Constitution.

Since plaintiffs' arguments against the constitutionality of sec. 138.06 (7), Stats., cannot be sustained, it follows that because the legislative enactment so provides, no class actions may be maintained that arose out of pre-October 9, 1970, usury claims.

As to any allegedly usurious transactions occurring after October 9, 1970, we make no ruling. We find in none of the complaints any affirmative statement that usurious rates were actually charged after October 9, 1970. The lower court never mentioned nor considered this problem and the briefs here do not raise the issue.

*By the Court.*—Orders affirmed.

DAY, J., took no part.