Hawarden vs. The Youghiogheny & Lehigh Coal Co.

HAWARDEN, Respondent, vs. THE YOUGHIOGHENY & LEHIGH
    COAL COMPANY, imp., Appellant.
SAME, Appellant, vs. SAME, Respondent.

.111 ·      545|
|s55 LRA  828|
| 56 LRA 709n|
| 57 LRA 548n|

*September 26 — October 15, 1901.*

*Combination to injure business: Equity: Injunction: Parties: Action by*
    *one of many: Joinder of causes of action.*

1. Persons have a right to combine for the purpose of promoting their
   individual welfare in any legitimate way, but where the purpose
   of the organization is to inflict injury on another, and injury re-
   sults, a wrong is committed upon such other for which he may
   recover damages, notwithstanding such purpose, if formed and exe-
   cuted by an individual, would not be actionable.  Thus, where the
   business of a retail coal dealer has been destroyed by a combina-
   tion between the wholesalers and certain retailers, one of the pur-
   poses of which was to force out of business all retailers not parties
   thereto, he may recover from the members of the combination for
   the damage thus caused.
2. Under sec. 2604, Stats. 1898 (providing that one or more may sue for
   the benefit of the whole where the question is one of common or
   general interest to many persons), a retail coal dealer who is one
   of many persons injured by an unlawful combination between
   other coal dealers to drive out of business all not members of the
   combination, may maintain an action for the benefit of all simi-
   larly situated to restrain the continuation of the operations of the
   conspiracy.
3. A cause of action at law for damages to the plaintiff growing out
   of an unlawful combination cannot, under sec. 2647, Stats. 1898, be
   united with a cause of action in equity in favor of the plaintiff
   and others similarly situated to restrain further operations by
   the combination, since both causes of action do not affect all the
   parties.

APPEALS from an order of the circuit court for Douglas
county: A. J. VINJE, Circuit Judge. *Reversed on plaintiff's*
*appeal; affirmed on that of the defendant.*

The plaintiff's complaint in this action attempts to state
two causes of action: (1) A cause of action at law by the
plaintiff, a retail coal dealer at Superior, to recover damages

Hawarden vs. The Youghiogheny & Lehigh Coal Co.

of the defendants by reason of the malicious destruction of his business, resulting from an alleged conspiracy on the part of the defendants; and (2) a cause of action in equity by the plaintiff on his own behalf and on behalf of many others similarly situated to restrain the further enforcement of the alleged conspiracy. There are twenty-three defendants, who are divided into two classes; the first class being composed of certain foreign corporations and their agents at Superior, Wisconsin, who are termed in the complaint as " wholesalers," and the second class composed of certain retail coal dealers in Superior, who are called " retailers."

The first alleged cause of action states, in substance, that " between August 1, 1900, and September 15th of that year, 'the wholesalers' united and confederated themselves into a trust and combination in restraint of trade and commerce, and renewed and extended the scope of a previously existing concert, and created an active, vicious, and damaging trust and monopoly designed to limit, manipulate, and control the retail coal trade in and about the city of Superior, and to hinder and embarrass the plaintiff in his means of livelihood, and to damage his property; that prior to September 15th the coal trade at Superior was carried on upon this plan: 'the wholesalers' did not directly solicit retail trade of consumers, but sold to all retail dealers at the market price, and they resold to the public for gain at such price as they saw fit, without interference or restriction from 'the wholesalers;' that after September 15th 'the wholesalers' refused to sell plaintiff coal at any price, and they still refuse to do so, and 'the retailers' refuse to sell him coal at wholesale rates for resale, and they arrogate to themselves the privilege of retailing coal in Superior, backed up, as aforesaid, by 'the wholesalers;' that 'the wholesalers' gave exclusive right to retail coal from their docks to 'the retailers,' and determine at what dock any retailer should be permitted to buy coal and what not, and of whom they should not be

allowed to purchase. The complaint further alleges that the limitation of retailers was for the purpose of controlling retail prices of coal in Superior, to force out of the retail coal trade all persons obnoxious to 'the wholesalers,' and among others 'the plaintiff,' to secure large profits to 'the wholesalers' and 'the retailers,' to deprive the public of free competition in the retail coal trade, to create and maintain a monopoly of the coal trade; that 'the retailers' agreed with 'the wholesalers' not to cut retail prices of coal, to sell coal at prices prescribed by 'the wholesalers,' to not invade each other's territory, to purchase coal at certain docks, not to sell for the purpose of resale to any persons not elected by 'the wholesalers' to the privilege of retailing coal in Superior, to not enter into price competition among themselves, to pay for all their purchases in cash, to forego the honorable name of retail coal merchants and assume the name of sales agents, to not do anything or suffer anything to be done to overthrow said trust and open the doors to free competition; that on or about the 10th day of September, 1900, the wholesalers and retailers put said contract, agreement, and understanding in force against 'the plaintiff' and the public; that the refusal to sell coal to the plaintiff is done in pursuance of, and to carry out the purposes of, said combination, and for no other reason; that about two thirds of all fuel used in Superior is coal bought directly or indirectly of 'the wholesalers;' that 'the wholesalers' own practically all the coal docks in Superior, Wisconsin, and Duluth, Minnesota, engaged in local trade at those points; and at the same time the action of 'the wholesalers' and 'the retailers' forced out of business ten or more other retail coal dealers in Superior, and thereby they have established a monopoly of the coal trade in that city, against the law of this state, and raised the price of coal to the people of Superior; that the plaintiff, *Edward Hawarden*, in December, 1898, purchased a two-thirds interest in the established retail coal

business of James B. Collins and wife at Superior, and of the teams, tools, office, and appliances used by said Collins and wife in that trade; that Collins and wife had an established retail trade in coal, based upon the right of any person to go into the business and to buy of 'the wholesalers' at the market price for retail for all times; that *Hawarden* and Collins carried on the business until June, 1900, when *Hawarden* bought out Collins and the good will of the business; that the profits of their business during the seasons from September to June were $40 a month, and his profits from September, 1900, to April 1, 1901, would have been $55 a month; that, as a result of said conspiracy, plaintiff, *Hawarden*, was forced out of the business, and his trade destroyed, thereby suffering damage in the sum of $500."

In the second and equitable cause of action the allegations of the first cause of action as to the character of the parties and formation and objects of the conspiracy and its effects are substantially repeated, and it is further alleged that not only the plaintiff, but many other retail coal dealers in Superior, of whom eight are named, were forced out of business by reason of the conspiracy, and that the defendants intend to continue the conspiracy indefinitely in the future; that the action is brought by the plaintiff on his own behalf and on behalf of all other retail coal dealers belonging to said class who may desire to become parties to the action; and an injunction is prayed for, restraining the defendants from the further enforcement of said conspiracy and compelling the wholesalers to sell coal to the plaintiff and others of said class upon the same conditions that they sell to the defendant retailers.

*The Youghiogheny & Lehigh Coal Company* demurred to the entire complaint on the ground that several causes of action are improperly united therein. Said company also demurred to the first cause of action separately for the reason that it does not state facts sufficient to constitute a cause of

action, and to the second cause of action separately for the same reason. The circuit court overruled the demurrer to the first cause of action, and sustained the demurrer to the second cause of action, and *The Youghiogheny & Lehigh Coal Company* appeals from that part of the order overruling the demurrer to the first cause of action, and the plaintiff appeals from that part of the order sustaining the demurrer to the second cause of action.

For the plaintiff the cause was submitted on the brief of *D. E. Roberts.*

*H. H. Grace,* for the defendant.

WINSLOW, J. The first count of the complaint is claimed to state a cause of action at law to recover damages resulting from an unlawful conspiracy, and the second count a cause of action in equity on behalf of a class to restrain the further execution of the conspiracy, and both counts are challenged by demurrer for insufficiency of facts.

1. The gist of the first count is that the plaintiff was a retail coal dealer in the city of Superior; that the defendants, " the wholesalers," own practically all the coal docks at Superior and Duluth, and that a retailer cannot carry on his business at Superior unless he can buy of the wholesalers freely and without discrimination; that the wholesalers entered into a combination with the defendant retailers by which it was agreed that the wholesalers should sell coal to the defendant retailers, and to none others, for the purpose, among others, of forcing out of the retail trade all retailers not in the combination, and among others the plaintiff; that such agreement or conspiracy has been successful, and as a result thereof the plaintiff's business has been destroyed, to his damage. Do these facts constitute a cause of action at common law? We think they do. It is undoubtedly true that, in the absence of any statute to the contrary, several persons may combine for the purpose of increasing their

business and making greater gains by any legitimate means, and if, as the incidental result of that combination, others are driven out of business, there is no actionable wrong. It is also true that one person, or a number of persons, by agreement may refuse to sell goods to another, if the purpose of such refusal be simply to promote his or their own welfare. From these propositions it is argued that no actionable wrong is shown in the present case; that the main purpose of the agreement charged was the lawful purpose to increase their own gains by legitimate means, and hence that the plaintiff is remediless, notwithstanding it is also charged that one purpose of the agreement was to drive the plaintiff out of business.

It may at once be admitted that this line of reasoning has been adopted by some of the courts which have been called upon to deal with the subject. It has not, however, been adopted by this court; in fact in the very recent case of *State ex rel. Durner v. Huegin,* 110 Wis. 189, it was, in effect, repudiated. It is true that case was a criminal case, but it necessarily involved the question of civil conspiracies at common law, as well as criminal conspiracies, and to the very full discussion there given by Mr. Justice MARSHALL it seems that very little can profitably be added. It was there stated, in substance and effect, that persons have a right to combine together for the purpose of promoting their individual welfare in any legitimate way, but where the purpose of the organization is to inflict injury on another, and injury results, a wrong is committed upon such other; and this is so notwithstanding such purpose, if formed and executed by an individual, would not be actionable. One person may, through malicious motives, attract to himself another's customers, and thus ruin the business of such other without redress; but when a number of persons, acting wholly or in part from such malicious motives, combine together, the injury to such other is actionable. "Where the act is lawful

for an individual, it can be the subject of conspiracy, when done in concert, only where there is a direct intention that injury shall result from it."

These principles are decisive as to the first count in this complaint. The allegation is distinct and clear that one of the purposes and objects of this agreement was to drive the plaintiff out of business. This was an ulterior and unlawful purpose, and constitutes malice in contemplation of law. Therefore, under the allegations of the complaint, it is clear that the combination here formed was formed for the malicious purpose of doing an injury to another, and that such injury has resulted, and hence that a cause of action at law for damages is stated.

The conclusion reached renders it unnecessary to consider the effect of sec. 1747e, Stats. 1898, with regard to combinations in restraint of trade or commerce.

2. In the second count the plaintiff attempts on behalf of a class of persons, namely, the retailers who were excluded from the combination, to obtain equitable relief by way of a perpetual injunction restraining the continuance of the operations of the conspiracy. That courts of equity have jurisdiction to restrain such conspiracies when irreparable injury will result and legal remedies will prove inadequate or a multiplicity of suits be necessary, seems to be well settled. *Beck v. Railway T. P. Union*, 118 Mich. 497. That the conspiracy may be directed against a considerable number of persons as well as against one, cannot be doubted. We have, therefore, before us an unlawful conspiracy directed against a large number of persons, which has already resulted in driving out of business a considerable number of such persons, and which the defendants threaten to continue indefinitely against the whole class.

Plaintiff claims that this situation brings the case within that provision of the statute contained in sec. 2604, Stats. 1898, which declares, " when the question is one of common

or general interest of many persons, . . . one or more may sue for the benefit of the whole." The question as to the legality of this conspiracy is certainly one of common and general interest to all persons against whom it was directed and is being enforced. The complaint alleges that there are many of such persons, and we are unable to perceive any fault in the plaintiff's contention. It is to be noted that there are two cases named in the statutes referred to in which one may sue for all, viz.: (1) When the question is one of common or general interest of many persons, and (2) when the parties are very numerous, and it is impracticable to bring them all before the court. The latter class was under consideration in the cases of *George v. Benjamin*, 100 Wis. 622, and *Hodges v. Nalty*, 104 Wis. 464; hence what is said in those cases as to the number of persons which will be deemed "very numerous" is inapplicable here, because this case comes under the first subdivision, which only requires the presence of a question of common or general interest of many persons. These conditions are satisfied here, and we conclude that the second count states a good cause of action in equity by the plaintiff on behalf of himself and a class composed of all other retail coal dealers in Superior similarly situated.

Thus there are two good causes of action stated in the complaint, one at law and one in equity, both arising out of the same transaction. But here arises for consideration the general demurrer to the whole complaint on the ground that two causes of action have been improperly united. Though this demurrer was not specifically referred to in the order appealed from for the reason that the court held that but one good cause of action was stated, still it was, in effect, overruled, as a necessary result of that order.

The statute provides that causes of action, in order to be united in one complaint, "must affect all the parties to the action." Stats. 1898, sec. 2647. It is clear that this limita-

tion would be violated if the two causes of action in this complaint are allowed to be united in one complaint. The first cause of action is a straight action at law for damages to the plaintiff alone. No one else has any interest in the judgment in that action, whatever it be. But the second cause of action is a cause of action in favor of a large number of persons, constituting a class represented by the plaintiff. Potentially all of the class are parties. They are invited to become formal parties plaintiff, and presumably will accept the invitation. Thus the first cause of action affects but one party plaintiff, whereas the second cause of action affects numerous parties plaintiff. The doctrine is frequently stated that the several causes of action for or against a person must affect him in the same capacity in order to make them capable of being joined. Pomeroy, Code Remedies (3d ed.), § 502.

These considerations are conclusive to the effect that the general demurrer to the whole complaint on the ground of improper joinder should have been sustained.

*By the Court.*— That part of the order overruling the demurrer to the first count of the complaint is affirmed, and that part sustaining the demurrer to the second count is reversed, and the action is remanded with directions to overrule the demurrer to the second count and sustain the separate demurrer to the entire complaint, and for further proceedings according to law.