SCHLOSSER, and others, individually and as representatives of all retired employees of Allis-Chalmers Corporation, Respondents, v. ALLIS-CHALMERS CORPORATION, Appellant.

*No. 392. (August Term, 1973). Argued June 5, 1974.—Decided October 14, 1974.*
(Also reported in 222 N. W. 2d 156.)

154

For the appellant there were briefs by *Laurence C. Hammond, Jr., John S. Holbrook, Jr., Larry J. Martin,* and *Quarles, Herriott, Clemons, Teschner & Noelke,* all of Milwaukee, attorneys, and *Vedder, Price, Kaufmann & Kammholz,* of Chicago, Illinois, of counsel; and oral argument by *Mr. Hammond.*

For the respondents there was a brief by *Whyte, Hirschboeck, Minahan, Harding & Harland, S. C.,* attorneys, and *Robert P. Harland, Richard C. Ninneman* and *James D. Wing* of counsel, all of Milwaukee, and oral argument by *Robert P. Harland* and *Richard C. Ninneman.*

WILKIE, C. J. Two principal issues are presented on this appeal:

I. Must the class members and their causes of action be joinable under sec. 263.04 or sec. 260.10, Stats., before a class action may be maintained under sec. 260.12?

II. Does this class action involving claims for separate damage recoveries satisfy the requirements of sec. 260.12, Stats.?

The complaint names two plaintiffs, Schlosser and Brown, both retired salaried employees of defendant. Both worked in defendant's corporate legal department. The named plaintiffs claim to bring this suit on behalf of themselves and "all other retired, non-union salaried employees of defendant who were retired as of February 1, 1973," a class of about 5,000 persons. The complaint asserts that the members of this class are too numerous to join as named plaintiffs, that the suit involves a question of common or general interest to all members of the class, and that the two named plaintiffs are able to represent the class "fairly and effectively."

Plaintiffs allege that in about 1930, defendant established a group life insurance program under which it agreed and promised to provide, at its sole expense, various amounts of group life insurance coverage to each nonunion salaried employee during his time of employment and after his retirement. Defendant was to continue assuming the total cost of the insurance during the employee's entire retirement, but with the face value of the coverage gradually being reduced to specific minimum benefits.

Plaintiffs assert that information about the benefits and coverage of the insurance program was communicated by defendant to these employees from time to time orally and in writing and that the program was offered as part of their contract of employment. Plaintiffs claim that they, and all other members of the class they purport to represent, relied on these promises and agreements concerning the group life insurance program in becoming or continuing as employees, and that they all retired expecting to receive the promised insurance at defendant's sole expense.

Plaintiffs further allege that in a December 29, 1972, letter, sent to all its retired nonunion salaried employees, defendant announced that effective February 1, 1973, free life insurance coverage would be reduced in face value below previously promised minimum levels. To receive any coverage above these new reduced levels, the employees were told they must pay one dollar per month per thousand dollars face value of additional coverage.

To establish a cause of action based on promissory estoppel, plaintiffs additionally allege that defendant should reasonably have expected its promises concerning the insurance program to induce plaintiffs and the class members to become or remain employees and continue as employees until retirement. Plaintiffs further allege that the promises did so induce them and the class members, and that injustice can only be avoided through enforcement of the promises.

Plaintiffs seek damages of twenty-five million dollars for themselves and the members of the class.

I. *Must the class members and their causes of action be joinable under sec. 263.04 or sec. 260.10, Stats., before a class action may be maintained under sec. 260.12?*

A. *The Opposing Contentions of the Parties.*

Defendant argues that before a class action may be maintained, two separate requirements must be satisfied: First, the claims of members of the proposed class must be joinable under sec. 263.04 or sec. 260.10, Stats., and second, the case must meet the conditions contained in sec. 260.12, that the class members be numerous and that their claims present a question of "common or general interest." Defendant asserts that since each class member has a separate cause of action and seeks separate relief, joinder would be improper under sec. 263.04, and that, therefore, no class action can be maintained.

On the other hand, plaintiffs argue that ability to maintain a class action hinges solely on meeting the requirements of sec. 260.12, Stats. They admit that the individual monetary claims would not be properly joinable under sec. 263.04, and assert that additional qualification under sec. 263.04 is not only unnecessary, but contrary to the basic policy served by the class action doctrine: The avoidance of a multiplicity of suits that involve similar questions of law and fact but which are nevertheless not joinable under restrictive interpretations of joinder statutes.

B. *Would Compliance with Joinder Statutes be Possible Here?*

At the outset it must be noted that the class members' claims could not be joined since the members assert separate causes of action that would not affect all the

parties to the action. Viewed under the "single occurrence" test,[1] each class member has a separate cause of action. The complaint does allege the existence of only one group insurance program providing identical benefits (except as to amount of coverage) to each retired nonunion salaried employee. The complaint also alleges that defendant changed the program at the same time and in the same way with respect to all these retired employees. However, the complaint alleges that the benefits of the insurance program devolved upon these employees as part of their separate employment contracts. Thus, when defendant changed the program, in effect it allegedly breached 5,000 separate contracts thereby creating 5,000 similar, but nevertheless legally distinct, causes of action. Since each cause of action affects only one retired employee, the causes of action may not be joined.

For similar reasons, the retired employees could not avail themselves of the party joinder provision [2] of sec. 260.10, Stats., which provides:

"All persons having an interest in the subject of the action or in obtaining the relief demanded may be joined as plaintiffs."

There is no one "subject of the action" here. The retired employees do not seek to divide a common fund or determine ownership rights to property in which they all claim an interest. Nor do they have an interest "in obtaining

[1] *Caygill v. Ipsen* (1965), 27 Wis. 2d 578, 582, 135 N. W. 2d 284 ("a cause of action must be viewed as a grouping of facts falling into a single unit or occurrence as a lay person would view them. This grouping of facts consists of 'the defendant's wrongful act' ").

[2] In *Van Dien v. Riopelle* (1968), 40 Wis. 2d 719, 723, 162 N. W. 2d 615, this court indicated in dicta that if there is a conflict between sec. 260.10, Stats. (who may join as plaintiffs) and sec. 263.04 (joinder of causes of action), then sec. 260.10 prevails.

the relief demanded," since they each seek a separate damages recovery.[3]

C. *Is Compliance with Joinder Statutes Required?*

Since neither the class members nor their claims may be joined under secs. 260.10 or 263.04, Stats., the issue is crucial whether compliance with these statutes is a necessary prerequisite to maintenance of a class action under sec. 260.12. We conclude that it is not.[4]

In a long unbroken line of cases, this court has considered the propriety of maintenance of class actions only in terms of the criteria contained in sec. 260.12, Stats., never once even referring to secs. 263.04 or 260.10.[5] In each of these cases the class action was held proper.

---

[3] *See Hartwig v. Bitter* (1966), 29 Wis. 2d 653, 660, 661, 139 N. W. 2d 644, where the plaintiffs sought to join their actions for deceitful misrepresentation despite the fact that the misrepresentations occurred at different times and that plaintiffs sought separate damage recoveries. The court held joinder improper: "It is clear that Hartwig and Wendt are not interested in obtaining the relief demanded since each on the face of the complaint seeks his separate relief in damages. Nor do they have an interest in the 'subject of the action.' There is no common fund or property in which they claim to have an interest. There is no 'subject of the action' in which they have a common interest."

[4] A recent commentator has reached the same conclusion. Starrs, *The Consumer Class Action—Part II: Considerations of Procedure,* 49 B. U. L. Rev. 407, 462 (1969) ("Wisconsin cases have not made the ability to bring a class action contingent upon a showing that joinder would be allowed . . . .")

[5] *State ex rel. Harris v. Larson* (1974), 64 Wis. 2d 521, 219 N. W. 2d 335; *Milwaukee Fire Fighters Asso. v. Milwaukee* (1971), 50 Wis. 2d 9, 20, 183 N. W. 2d 18; *Shearer v. Congdon* (1964), 25 Wis. 2d 663, 666, 131 N. W. 2d 377; *Lozoff v. Kaisershot* (1960), 11 Wis. 2d 485, 488, 489, 105 N. W. 2d 783; *Pipkorn v. Brown Deer* (1960), 9 Wis. 2d 571, 577, 101 N. W. 2d 623; *Wesolowski v. Erickson* (1958), 5 Wis. 2d 335, 339, 340, 92 N. W. 2d 898; *Herman v. United Automobile, Aircraft & Agricultural Implement Workers* (1953), 264 Wis. 562, 567, 568, 59 N. W. 2d 475; *Peters v. International Harvester Co.* (1946), 248 Wis. 451, 455, 22 N. W. 2d 518; *Marshall v. Wittig* (1931), 205 Wis. 510, 514, 238 N. W. 390.

*Pipkorn v. Brown Deer* is the leading recent case on the subject.[6] After tracing the development of the class action doctrine from its origins in the old equity or chancery practice, this court upheld the right of a few beneficiaries of a water trust to defend an action affecting the trust assets on behalf of all similarly situated beneficiaries. The issue before the court was "whether the amended complaint pleads a class suit on the part of defendants within sec. 260.12, Stats."[7] No question of joinder under secs. 263.04 or 260.11 (permissive joinder of defendants) was raised or decided.

This court's treatment of class actions as governed only by sec. 260.12, Stats., is consistent with the familiar rule of statutory construction that where two statutes deal with the same subject matter, the more specific controls.[8] Here, secs. 263.04, 260.10, 260.11, and 260.12 all pertain to joinder of causes of action or parties. However, since sec. 260.12 on its face applies to particular actions involving numerous parties, class actions, its provisions govern rather than those of the other more general joinder statutes.

D. *Defendant's Arguments.*

Unable to rely on any recent cases, defendant tries to garner support from several old cases and a treatise for its argument that compliance with joinder statutes is a prerequisite to maintaining a class action.

1. *Pomeroy's treatise.* Defendant quotes of a portion of sec. 289 of Pomeroy's treatise, *Code Remedies,* in which the author discusses the proper construction to be

---

*See also: Oscar Mayer & Co. v. Manson* (1963), 19 Wis. 2d 521, 523, 120 N. W. 2d 683.

[6] (1960), 9 Wis. 2d 571, 101 N. W. 2d 623.

[7] *Id.* at page 575.

[8] *Kramer v. Hayward* (1973), 57 Wis. 2d 302, 311, 203 N. W. 2d 871; *Estate of Zeller* (1968), 39 Wis. 2d 695, 700, 159 N. W. 2d 599; *Bornemann v. New Berlin* (1965), 27 Wis. 2d 102, 111, 133 N. W. 2d 328.

given the Field Code class action provision (sec. 260.12, Stats.) in light of the prior equity practice that *Pipkorn* indicated sec. 260.12 was designed to continue: [9]

". . . The test would be to suppose an action in which all the numerous persons were actually made plaintiffs or defendants, and if it could be maintained in that form, then one might sue or be sued on behalf of the others; but if such an actual joinder would be improper, then the suit by or against one as a representative would be improper, notwithstanding the permission contained in this section of the statute." [10]

Defendant assumes erroneously that the reference to "joinder" pertains to joinder under statutory joinder provisions. As Pomeroy makes clear, however, in other sections of *Code Remedies,* and in another treatise, *Equity Jurisprudence,* courts of equity followed very flexible joinder rules, and were not constrained by the more narrow legal rules. For example, in sec. 162 of *Code Remedies* he states:

". . . The persons that can be made co-plaintiffs in an equity suit may be roughly separated into two general classes: (1) Those whose rights, claims, and interests, as against the defendant, are joint,—not necessarily joint in the strict, technical sense of the common law, but in a broader and popular sense,—that is, those whose interests, claims, and rights, whether legal or equitable, are concurrent, arising out of the same events, having the same general nature, and entitled to the same sort of

[9] Sec. 260.12, Stats., was copied from the New York Field Code and adopted by Wisconsin in 1856. The provision was included in the Field Code to insure that prior equity practice would be preserved. *Pipkorn v. Brown Deer* (1960), 9 Wis. 2d 571, 576, 101 N. W. 2d 623; comment, *The Representative Suit in Wisconsin,* 31 Marq. L. Rev. (1947), 80, 81.

The language of the class action provision in sec. 260.12, Stats., is unchanged since its adoption in 1856, and would not be altered by the *Proposed Code of Civil Procedure for Wisconsin. See Proposed Code,* sec. 803.08, in 1973 Wis. L. Rev., Special Issue, p. 46.

[10] Pomeroy, *Code Remedies* (5th ed. 1929), p. 441, sec. 289.

relief. . . . (2) In the second class are found all those persons who are collaterally interested in the subject-matter of the controversy; whose interests and claims, although antagonistic to the defendant, and to that extent, therefore, in harmony with those of the real plaintiff, are still several and distinct in their nature, arising from different facts and circumstances, and demanding perhaps a different relief." [11]

The first category mentioned by Pomeroy includes those plaintiffs who might have been joinable under permissive joinder statutes; the persons mentioned in the second category, however, clearly could not have been so joined.

As Pomeroy further points out in *Equity Jurisprudence,* the need for a court of equity to take jurisdiction over a controversy involving a great many parties and causes of action was particularly strong where restrictive legal rules prohibited joinder, but where, despite these rules, the issues involved could be conveniently tried together.[12] Rigid adherence to the joinder rules would have defeated the very purpose for the assumption of equitable jurisdiction.[13] Thus, we conclude that defendant's reliance on Pomeroy is misplaced.

2. *Cases requiring class members to be necessary parties.* Defendant also argues that the 1865 decision of *Barnes v. Beloit* [14] requires this court to consider compliance with joinder statutes a prerequisite to mainte-

[11] *Id.* at page 268, sec. 162.

[12] 1 Pomeroy, *Equity Jurisprudence* (5th ed.), p. 462, sec. 243.

[13] *Cf.* Pomeroy's statement in the preface to the first edition, expressing the fear that with the adoption of codes of civil procedure, ". . . equitable principles and doctrines would gradually be suppressed and disappear in the administration of justice; [and] that they would gradually be displaced and supplanted by the more inflexible and arbitrary rules of the law . . . ." *Id.,* at page (xxiii).

[14] (1865), 19 Wis. 104 (*93).

nance of a class action. In *Barnes,* two plaintiffs sued on behalf of a class of landowners to restrain the sale of their property to satisfy allegedly illegal special assessments. The court held that no class action could be maintained unless the class members were necessary parties and, therefore, subject to compulsory joinder. This decision, even more restrictive than defendant's argument that permissive joinder statutes must be complied with, is typical of a number of older cases.[15]

*Linden Land Co. v. Milwaukee Electric Ry. & Light Co.*[16] probably represents the high-water mark of this line of cases, and also goes the farthest in explaining their rationale. Plaintiffs sued on behalf of all persons owning land abutting on Milwaukee streets, to enjoin the city council from permitting the construction and operation of a street car system. The court held that since the landowners were proper (*i.e.,* subject to permissive joinder) but not necessary parties no class action could be maintained. The court's holding was basically grounded in the antiquated notion that the res judicata effects of a class action judgment could extend only to absent class members qualifying as necessary parties:

". . . They may join in one action if they choose, but they are not compelled to; and it follows logically from this that, if they do not join, no one owner is bound by the result of another's separate action. The theory of the action, where one properly sues for all, is that the result is conclusive on all who are similarly situated and whom the plaintiff rightfully represents; and such must be the

[15] *Carstens v. Fond du Lac* (1909), 137 Wis. 465, 471, 472, 119 N. W. 117; *Foster v. Rowe* (1907), 132 Wis. 268, 270, 111 N. W. 688; *Linden Land Co. v. Milwaukee Electric Ry. & Light Co.* (1900), 107 Wis. 493, 507–509, 83 N. W. 851; *Gilkey v. Merrill* (1886), 67 Wis. 459, 461, 30 N. W. 733; *Newcomb v. Horton, County Treasurer* (1864), 18 Wis. 594, 597 (*566, *569). *See Howland v. Board of Supervisors of Kenosha County* (1865), 19 Wis. 264, 265 (*247, *248), (issue raised but not decided).

[16] (1900), 107 Wis. 493, 83 N. W. 851.

theory, or else the plaintiff does *not* represent all, and the statement that he does is not only false but absurd.

"It is palpably evident that the principle cannot apply to abutters, because, as said before, they may join or not, as they choose. If one can rightfully refuse to join, his rights manifestly cannot be litigated or determined in the action, and hence he cannot be bound by the result, and by no legal fiction can it be said that he has been represented in the action." [17]

Whatever vitality it had in 1900, the court's view that class action judgments can bind only necessary parties has no validity today. As the United States Supreme Court indicated in *Hansberry v. Lee* [18] (cited with approval in *Pipkorn v. Brown Deer*),[19] class members may be bound by the judgment where they participate in the litigation, where their interests are joint, or where they otherwise stand in legal privity, but also simply "where they are in fact adequately represented by parties who are present." They need not be necessary parties, and actually regardless of the legal relationship of class members, courts should always carefully scrutinize the litigation to ensure that the representation by the named parties is in fact adequate.[20] Thus, since the restrictive theory of res judicata underlying these necessary party class action cases has been discredited, they should no longer be considered good law.

---

[17] *Id.* at page 508.

[18] (1940), 311 U. S. 32, 42, 43, 61 Sup. Ct. 115, 85 L. Ed. 22, Annot. (1941), 132 A. L. R. 741.

[19] (1960), 9 Wis. 2d 571, 580, 581, 101 N. W. 2d 623.

[20] *Id.* at page 577 (the named parties must "fairly represent the interest or right involved so that it may be fairly and honestly tried"); *Hansberry v. Lee* (1940), 311 U. S. 32, 45, 61 Sup. Ct. 115, 85 L. Ed. 22, Annot. (1941), 132 A. L. R. 741 ("a selection of representatives for purposes of litigation, whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires").

In addition, viewed from an historical perspective, these cases represent only one of the two distinct branches of decisions that comprise the class action doctrine and should, therefore, not be viewed as the exclusive law on the subject. As Professor G. W. Foster has recently noted:

"The class suit emerged as an identifiable remedy during the seventeenth and eighteenth centuries out of two somewhat dissimilar lines of cases in equity which may be lumped approximately under the headings of 'necessity' and of 'convenience'." [21]

Concerning class representation grounded on "necessity" Professor Foster writes:

"In the necessity cases, class representation was established as an exception to the broad equitable rule requiring joinder of all parties necessary to a just result in the case.
". . .
". . . The 'class' or 'representative' suit evolved as a device for excusing the joinder of 'necessary' parties by permitting the parties before the court to represent absentees whose joinder would have been impossible or might have imposed undue burdens because of the sheer numbers involved." [22]

Concerning class representation grounded on "convenience," Professor Foster comments:

"The other line of equity cases centered not on the necessity for joining parties but the convenience and sometimes—as in the case of the Bill of Peace—the justice of avoiding repetitious litigation by permitting one suit to resolve questions common to many suits." [23]

[21] Foster, *The Status of Class Action Litigation,* 1974 Research Contributions of The American Bar Foundation, No. 4, p. 2. These two lines of cases in English chancery practice are also found in American decisions. *See, id.* at pages 5–10.

[22] *Id.* at pages 2, 3.

[23] *Id.* at page 3.

Finally, as plaintiffs point out, these necessary party class action cases can be distinguished on the ground that they involve actions to enjoin local governments from collecting tax,[24] a type of litigation discouraged by courts, even in the absence of a class action.[25] Since the case at bar is a private action for damages, the necessary party cases should arguably have no applicability.

3. *Cases dismissing causes of action for misjoinder.* Defendant last relies on the cases of *Hawarden v. Youghiogheny & Lehigh Coal Co.*[26] and *Tyre v. Krug*[27] where this court severed and dismissed for misjoinder causes of action for damages in class actions seeking injunctive relief. Defendant contends that these cases mean that joinder statutes must be complied with before a class action may be maintained.

This contention may be disposed of quickly. In both *Hawarden* and *Tyre* a single plaintiff sought injunctive relief for each member of a class, but damages only for himself. Dismissal of the damages action for misjoinder was proper, since it was not even purported to be a class action. The court was not presented with, nor did it rule on, a question as to the propriety of a class action where damages were sought by each member of the class.

[24] All the cases cited in footnote 15 were actions to restrain tax collection except the *Linden Land Co. Case.* This action also sought to restrain governmental activity, however, in seeking to block the creation of a municipal street car system.

[25] *Gilkey v. Merrill* (1886), 67 Wis. 459, 460, 30 N. W. 733 ("a court of equity would not interfere in any case to restrain the collection of a tax, unless such tax created a cloud upon the plaintiff's title to real estate"). *See State ex rel. Sheboygan v. Sheboygan County* (1928), 194 Wis. 456, 460, 216 N. W. 144 ("Taxes are the life blood of every governmental unit. . . . no governmental agency can continue to function if it is denied the right to collect taxes . . . .") (not a class action).

[26] (1901), 111 Wis. 545, 87 N. W. 472.

[27] (1914), 159 Wis. 39, 149 N. W. 718.

We conclude that ability to maintain a class action hinges solely upon meeting the criteria of sec. 260.12, Stats., and not those of any other joinder statutes.

II. *Does this class action involving claims for separate damage recoveries satisfy the requirements of sec. 260.12, Stats.?*

A. *Opposing Arguments.*

This lawsuit attempts to aggregate approximately 5,000 separate damage claims. Defendant argues that the amount and basic right of recovery under each claim must be individually determined. A class action is, therefore, not proper, according to defendant, because the "common or general interest" requirement of sec. 260.12, Stats., is not satisfied, and no judicial economy would be achieved.

Plaintiffs argue, on the other hand, that class actions seeking separate damage recoveries are proper under sec. 260.12, Stats., where the common issues "decisively predominate" over the separate issues. In this case, plaintiffs assert, the issue of defendant's liability is identical under each class member's claim, and the only noncommon issue—the amount of damages—may be easily ascertained by reference to records and documents in defendant's possession. Plaintiffs argue that therefore *Peters v. International Harvester Co.,*[28] where this court authorized a class action aggregating separate damage claims, is squarely on point here, and controlling.

B. *When may a class action be maintained under sec. 260.12, Stats.?*

Sec. 260.12, Stats., has been described as "one of the worst" provisions in the Field Code,[29] and has intentionally been left in vague language unamended. As an 1878 Revisor's note comments:

---

[28] (1946), 248 Wis. 451, 22 N. W. 2d 518.

[29] Homburger, *State Class Actions and the Federal Rule,* 71 Colum. L. Rev. 609, 613 (1971): "The provision may well qualify as one of the worst in the Code. Nevertheless its capacity for endurance has been remarkable."

". . . This section is not a very exact definition of the proceeding intended; but as the difficulty lies in the nature of the subject, it has seemed best to attempt no amendment, but to leave the requirements to be worked out by the courts as cases arise. See *Stevens v. Brooks,* 22 Wis. 663." [30]

The first problem presented by this statutory provision is whether it should be read conjunctively or disjunctively. In *Pipkorn v. Brown Deer,* [31] the court noted that in contrast to the old equity practice the statute was designed to continue, some cases have held that it authorizes class actions in two different situations: [32] (1) Where the question is one of a common or general interest of many persons, or (2) where the parties are very numerous and it may be impracticable to bring them all before the court. In *Pipkorn* the court declined to resolve the issue since it found both requirements satisfied by the facts of the case. Actually, the difference between the two seems entirely abstract and of little practical significance. The court always requires class members to have some common or general interest and to be numerous. The statute should be construed to present only one set of criteria. These criteria were spelled out in *Lozoff v. Kaisershot,* [33] as follows: (1) The named parties "must have a right or interest in common with the persons represented;" (2) the named parties "must fairly represent the interest or right involved so that the issue may be fairly and honestly tried;" and (3) it must be "impracticable to bring all interested persons before the court."

[30] Notes to Revision, 1878, ch. 118, sec. 2604, p. 185.
[31] (1960), 9 Wis. 2d 571, 576, 577, 101 N. W. 2d 623.
[32] *See Hawarden v. Youghiogheny & Lehigh Coal Co.* (1901), 111 Wis. 545, 87 N. W. 472; *George v. Benjamin* (1898), 100 Wis. 622, 76 N. W. 619; *Day v. Buckingham* (1894), 87 Wis. 215, 58 N. W. 254.
[33] (1960), 11 Wis. 2d 485, 488, 105 N. W. 2d 783.

C. *Does the instant case meet the criteria of sec. 260.12, Stats.?*

1. *Numerousness and adequate representation.* The latter two criteria pose no difficulties. Five thousand persons is surely an impracticable number to bring before the court, and the named parties in this case are unquestionably litigating zealously.

2. *Community of interest requirement.* The question of whether the class members have a right or interest in common here presents more of a problem. Commentators have sharply disagreed as to whether this court has interpreted the common interest requirement restrictively [34] or liberally.[35] The old cases discussed above, holding that class members must be necessary parties, were very restrictive. However, in the last fifty years, this court has been much more flexible, finding class actions proper where justified by, in Professor Foster's terms, both "necessity" and "convenience." [36]

Flexibility was a hallmark of the old equity practice.[37] As Pomeroy comments, when deciding whether to aggregate actions to prevent a multiplicity of suits, most courts looked beyond traditional notions of privity:

". . . the weight of authority is simply overwhelming that the jurisdiction may and should be exercised, either

[34] Homburger, *State Class Actions and the Federal Rule*, 71 Colum. L. Rev. 609, 624 (1971), mentions Wisconsin as one of the states which "obediently toe the traditional line of privity."

[35] Starrs, *The Consumer Class Action—Part II: Considerations of Procedure*, 49 B. U. L. Rev. 407, 463 (1969), comments: "Admittedly, the Wisconsin Supreme Court has yet to take a long and hard look at the permissible limits of the class action. The cases to date, however, support the proposition that a very permissive attitude exists in that court. It is an attitude that Wisconsin attorneys would be remiss to let slip by untapped."

[36] *See* Foster, *The Status of Class Action Litigation*, 1974 Research Contributions of The American Bar Foundation, No. 4.

[37] ". . . While there is little evidence that class suits expanded far into new areas as long as familiar precedents were at hand, it is also apparent that American courts retained considerable

on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' nor 'community of right' or of 'interest in the subject-matter,' among these individuals, but where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body. In a majority of the decided cases, this community of interest in the questions at issue and in the kind of relief sought has originated from the fact that the separate claims of all the individuals composing the body arose by means of the same unauthorized, unlawful, or illegal act or proceeding. Even this external feature of unity, however, has not always existed, and is not deemed essential. Courts of the highest standing and ability have repeatedly interfered and exercised this jurisdiction, where the individual claims were not only legally separate, but were separate in time, and each arose from an entirely separate and distinct transaction, simply because there was a community of interest among all the claimants in the question at issue and in the remedy. [Footnotes omitted.]" [38]

Pomeroy's comments have been criticized by some authorities, most notably the Mississippi Supreme Court, as being too liberal.[39] However, writing in 1950, Professor

flexibility in handling them, showing more concern for fair and practical results than for rigid adherence to concept." *Id.* at 12.

[38] 1 Pomeroy, *Equity Jurisprudence* (5th ed.), pp. 598–600, sec. 269. Pomeroy notes that this liberal judicial attitude was in contrast to an "early theory" described in *id.*, sec. 268, p. 596, under which a court of equity would not join claims to avoid a multiplicity of suits unless they arose from a common title or were characterized by some similar indicia of legal privity. Pomeroy comments: "This early theory has, however, long been abandoned." *Id.*, sec. 269, pp. 597, 598.

[39] *See Tribette v. Illinois Central R. R.* (1892), 70 Miss. 182, 190, 191, 12 So. 32, 33, 34. This controversy was noted by the Wisconsin Supreme Court in *Illinois Steel Co. v. Schroeder* (1907), 133 Wis. 561, 113 N. W. 51, which held that neither the strict nor the liberal rule could justify uniting 84 separate ejectment actions where under the facts each of the 84 defendants

Chafee concluded that Pomeroy's views were supported both by the reported decisions and sound public policy, and he suggested the basic problem boiled down to this:

"[T]he court must determine whether the advantages of disposing of the entire controversy in one proceeding are outweighed by the difficulties of combining divergent issues and persons. It is a question of the balance of convenience whether the court will settle all the issues in one suit; or will settle only the common question in one suit and then allow the independent questions to proceed in separate equity suits; or not settle the controversy at all in a single suit." [40]

We think these principles support the lower court's decision allowing maintenance of the class action here. Although the class members do have distinct causes of action, the common issues far outweigh the separate issues. The complaint alleges that defendant promised each class member free retirement life insurance under the company's single group insurance program. Then defendant changed the program at the same time and in the same way with respect to each class member. Several questions of common or general interest are thus presented: What was defendant's retirement insurance program? Did defendant breach its obligations in unilaterally changing the program? What formula is appropriate to measure the damages suffered, if any, by the class members? Although the question of the amount of damages to which each class member would be entitled would have to be separately determined after the above issues were decided in a common trial, this last question would not seem overly complicated and could undoubtedly be resolved by reference to insurance records in defendant's possession.

claimed to adversely possess a separate tract of land. The court did not endorse either rule, but said, "Each case must rest in a large degree upon its own particular facts." *Id.* at page 574.

[40] Chafee, *Some Problems of Equity* 193.

Defendant protests in its brief that different promises were made to each class member and that therefore no questions of common interest are presented in this case. However, the complaint alleges defendant promised the same free life insurance program to each class member. Since this case is on appeal from an order overruling a demurrer, this allegation must be considered true. If defendant has contrary information showing that, in fact, no common issues are involved in this case, it must be presented in further proceedings in the lower court and not here.

The conclusion that a class action would be appropriate here is supported by this court's decision in *Peters v. International Harvester Co.*,[41] a case on all fours with the case at bar. In *Peters*, two named plaintiffs sued on behalf of themselves and 104 employees to recover damages resulting from illegal deductions taken from their wages by the defendant employer. The court noted that each employee had a separate cause of action for damages, but held that the case could proceed as a class action under sec. 260.12, Stats. As this court pointed out in *Pipkorn v. Brown Deer* [42] in describing the *Peters* case:

". . . Each of the members of the class had a complete and separate cause of action for a different amount, but the common or general interest was the alleged unlawful act of the employer."

*Peters* is controlling here. Both *Peters* and the case at bar involve suits by a class of employees against their employer. In each case, some allegedly unlawful act or series of identical acts of the employer injured each member of the class in the same way, but produced a different amount of damages. And in each case the employees had separate and distinct causes of action.

[41] (1946), 248 Wis. 451, 22 N. W. 2d 518.
[42] (1960), 9 Wis. 2d 571, 579, 101 N. W. 2d 623.

### D. Defendant's Arguments.

1. *Distinguishing Peters.* Defendant attempts to distinguish *Peters* by arguing that the defendant in that case waived his right to object to the propriety of the class action. This argument is based on the following language in *Peters:*

"The defendant by answer or demurrer did not object to the misjoinder of the two named plaintiffs, and so waived that objection. Sec. 263.12, Stats." [43]

Contrary to defendant's argument, however, it is apparent from this language that the court considered that the waiver pertained only to the named parties, and not to the members of the class.[44] This point is reinforced by the court's statement later in the opinion when it directly discussed the class action issue:

". . . The instant complaint alleges and the answer categorically denies that the cause of action is one of common or general interest to many persons and the answer asserts that each of the hundred four persons named in the exhibit attached to the complaint has a distinct and individual cause of action, if any exists." [45]

Thus it is apparent that the court did not feel defendant had waived its right to contest the propriety of maintenance of a class action.

2. *Class actions may be proper for equitable relief but not for separate damage recoveries.* Defendant suggests that the class action may be a beneficial and useful device where the suit seeks some kind of injunctive relief, but that where individual damage recoveries are sought, the device should not be available. This argument is incon-

---

[43] *Peters v. International Harvester Co.* (1946), 248 Wis. 451, 453, 22 N. W. 2d 518.

[44] Thus, had the court decided no class action could be maintained under sec. 260.12, Stats., the two named plaintiffs could have proceeded together in a joint action.

[45] *Peters, supra,* footnote 43, at page 455.

sistent with the flexible principles of equity described above upon which the class action doctrine is based. It may be true that class actions will more often be proper where equitable relief is sought, because such cases may present fewer problems of individual proof. Nevertheless, there is no theoretical or practical reason why class actions for damages may not be maintained where, under the facts of the case, a simplification of the lawsuit would result and a multiplicity of litigation could be avoided. A class action may not be appropriate if each class member would have to appear and testify individually about a complex and disputed set of facts unique to him, in order to establish his right to recover. Little time economy would be achieved. On the other hand where, as here, the questions individual to each class member are simple and would require little individual participation, there is no reason why a class action would not be appropriate. The question as to which of these situations was present in a given action would, of course, have to be decided by the trial court after a careful review of the facts.

This analysis is supported by the recent case of *Milwaukee Fire Fighters Asso. v. Milwaukee*,[46] where this court affirmed the right of persons to mount a class action seeking individual damage recoveries. The plaintiff union sued the city of Milwaukee "on behalf of its members and other employees of the fire department" seeking damages for deprivation of holiday off-days during 1962 and 1963. Concerning the union's ability to maintain the suit as a class action for damages the court said:

"The trial court correctly held that appellant was a proper party-plaintiff, and the respondent does not contest this issue on appeal. Sec. 260.12, Stats.; *Pipkorn v. Brown Deer* (1960), 9 Wis. 2d 571, 577, 101 N. W. 2d

[46] (1971), 50 Wis. 2d 9, 20, 183 N. W. 2d 18.

623; *Lozoff v. Kaisershot* (1960), 11 Wis. 2d 485, 488, 489, 105 N. W. 2d 783."

3. *The law of other states.* Finally, defendant argues that this court should follow the restrictive class action decisions in New York, the state which first adopted the Field Code. This argument is in part based on what the New York Court of Appeals announced in 1939:

". . . Separate wrongs to separate persons, though committed by similar means and even pursuant to a single plan, do not alone create a common or general interest in those who are wronged." [47]

Recently in a brief per curiam opinion, an intermediate appeals court held that a suit to recover damages due to termination of retirement benefits could not be maintained as a class action.[48] Unlike the case at bar, however, the court noted that the complaint alleged that defendant company had made different promises concerning retirement benefits to different employees. Thus the complaint apparently did not allege, as here, the existence of just one retirement program affecting each retired employee identically except as to level of coverage.

In sharp contrast to these restrictive New York decisions are the recent opinions of the California Supreme Court interpreting the same Field Code class action provision found in Wisconsin and New York. These Cal-

---

[47] *Society Milion Athena v. National Bank of Greece* (1939), 281 N. Y. 282, 292, 22 N. E. 2d 374, 377 (suit by bank customers to recover deposits allegedly fraudulently solicited and received). The *Society Milion Athena* decision was recently affirmed in *Hall v. Coburn Corp. of America* (1970), 26 N. Y. 2d 396, 259 N. E. 2d 720, where the court declined to revise its harsh stance on class actions, in a suit by consumers to recover statutory penalties based on installment sales contracts containing a type size smaller than the statutory minimum. *But see: Richards v. Kaskel* (1973), 32 N. Y. 2d 524, 300 N. E. 2d 388; and *Kovarsky v. Brooklyn Union Gas Co.* (1938), 279 N. Y. 304, 18 N. E. 2d 287.

[48] *Gledhill v. Best & Co., Inc.* (1969), 33 App. Div. 2d 541, 304 N. Y. Supp. 2d 284.

ifornia cases are more consistent with prior decisions of this court and the spirit of the flexible equity practice which spawned the class action doctrine.

In the landmark decision of *Daar v. Yellow Cab Co.*[49] the California Supreme Court allowed maintenance of two class actions based on systematic overcharges by defendant cab company over a four-year period: one on behalf of the riders paying with script book coupons issued by defendant, and one on behalf of all taxicab users paying cash for rides. The court held:

"[T]wo requirements must be met in order to sustain any class action: (1) there must be an ascertainable class [citations omitted]; and (2) there must be a well defined community of interest in the questions of law and fact involved affecting the parties to be represented [citations omitted]."[50]

In determining whether these requirements are met in any given case, the court disclaimed reliance on any specific test, but indicated rather that the facts of each case would be carefully scrutinized. Thus the court held it was not essential to the establishment of a class action that a common fund exist or that a common recovery be sought. Furthermore, the court said:

". . . The fact that each individual ultimately must prove his separate claim to a portion of any recovery by the class is only one factor to be considered in determining whether a class action is proper."[51]

However, in this connection, the court said that a class action would not be proper where related causes of action were:

"'. . . separate and distinct in the sense that every member of the alleged class would have to litigate numerous and substantial questions determining his individual

---

[49] (1967), 67 Cal. 2d 695, 63 Cal. Rptr. 724, 433 Pac. 2d 732.
[50] *Id.* at page 704.
[51] *Id.* at page 713.

right to recover against the named defendant or defendants following the rendering of a "class judgment" which determined in plaintiffs' favor whatever questions were common among the plaintiffs sought to be represented as a class.' " [52]

In the more recent case of *Vasquez v. Superior Court*,[53] the California Supreme Court reaffirmed its decision in *Daar* and held a class action proper for rescission of consumer sales contracts where customers were induced to buy based on allegedly fraudulent oral misrepresentations. The fact that the misrepresentations were oral did not preclude a class action, said the court, where the complaint alleged that the same statements were made to each class member so that "proof of the prevalence of the practice as to one consumer would provide proof for all." [54]

The rationale for these decisions of the California Court can be best expressed by this statement in *Daar:*

[52] *Id.* at page 707, quoting *Chance v. Superior Court* (1962), 58 Cal. 2d 275, 285, 23 Cal. Rptr. 761, 373 Pac. 2d 849.

Concerning the *Daar* decision, one commentator has written: "*Daar* represented a sharp break with the doctrine of substantive privity that had been read by most state courts into the Field Code provision. Even though the California court, in typical common law fashion, professed to apply rules imbedded in existing precedents, it is clear that in reality it has broken with the past. In California, at long last, the doctrine of privity has yielded to the doctrine of identity of issues of law and fact uniting the class. The emphasis no longer is only on impracticability of joinder, but also on impracticability of prosecuting the individual claims by separate actions. Instead of searching for a nebulous community of interest uniting the class, the court was mindful of the interest of the community in vindicating a group wrong for which, absent a class suit, there was no other effective remedy." Homburger, *State Class Actions and the Federal Rule*, 71 Colum. L. Rev. 609, 625 (1971).

[53] (1971), 4 Cal. 3d 800, 94 Cal. Rptr. 796, 484 Pac. 2d 964.

[54] *Id.* at page 808.

". . . It is more likely that, absent a class suit, defendant will retain the benefits from its alleged wrongs. A procedure that would permit the allegedly injured parties to recover the amount of their overpayments is to be preferred over the foregoing alternative." [55]

*By the Court.*—Order affirmed.

DAY, J., took no part.

[55] *Daar, supra,* footnote 49, at page 715.