MUSSALLEM, individually and on behalf of all others similarly situated, Respondent, v. DINERS' CLUB, INC., Appellant.

*No. 449. Submitted June 3, 1975.—Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 717.)

438

For the appellant the cause was submitted on the brief of *Conrad H. Johnson* and *Schlotthauer, Johnson & Mohs*, all of Madison.

For the respondents the cause was submitted on the brief of *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison.

HEFFERNAN, J. The order of the circuit court overruling the demurrer held that the facts stated in the complaint were sufficient to state a class action and that an action for usurious interest brought by a representative of the class was not contrary to public policy. We affirm.

This appeal involves a class action alleging the charging of usurious interest rates in connection with a revolving charge account plan. The action, filed March 23, 1973, is brought by plaintiff-respondent, Victor A. Mussallem, on behalf of himself and all other Wisconsin residents who entered into a credit agreement with defendant-appellant, Diners' Club International, Inc. Defendant sought to challenge the propriety of a class action by demurrer.

The complaint describes the class as over 500 Wisconsin residents who, within two years prior to the commencement of the action, entered into defendant's "revolving charge account" plan known as "Diners' Club Airline Extended Payment Plan." It is alleged that the members of the class are too numerous to make individual litigation practicable and that the action presents a question of common and general interest to all members of the class. The complaint states that the credit plan was offered to "residents of Wisconsin who are consumers," and which "allowed a customer to make numerous purchases of airline tickets and certain other items on one account and which provided a single monthly billing with a charge on the unpaid balance of the entire account, said plan now being commonly referred to as a 'revolving charge account' . . . ." The terms of the credit agreement were alleged to have resulted in payment of a usurious rate of interest in violation of sec. 138.05, Stats.

The complaint seeks an accounting and recovery of interest and penalties for usury violations occurring during the two-year period ending on the date the action was commenced.

As an alternative to the class suit, the complaint also alleged a similar cause of action on behalf of the named plaintiff alone. In addition, the complaint contains both class and individual causes of action, alleging willfulness, maliciousness, and intent and seeking punitive damages.

This case represents another chapter in the series of usury cases brought in the wake of *State v. J. C. Penney Co.* (October 9, 1970), 48 Wis. 2d 125, 179 N. W. 2d 641. In that case we held that a service charge of one and one-half percent per month constituted usurious interest and that the practice of charging usurious rates constituted a public nuisance.

In reliance on that decision, cases were brought in the trial courts to recover usurious charges and to recover the statutory penalties.

In *Wiener v. J. C. Penney Co.* (1974), 65 Wis. 2d 139, 222 N. W. 2d 149, we considered post-*State v. J. C. Penney Co.* legislation that prohibited pre-*State v. J. C. Penney Co.* class actions for usury. We held that it was not unconstitutional for the legislature to prohibit class actions based on pre-October 9, 1970, usury claims.

In *Wiener,* we expressly declined to rule on the applicability of the statute to post-October 9, 1970, usury transactions. The court, however, said, "Any further violations could not be considered in good faith . . . ." (P. 149) The post-*State v. J. C. Penney Co.* statute, sec. 138.06 (6) and (7), are concerned only with pre-*State v. J. C. Penney Co.* usurious transactions.

The case before us involves allegedly usurious transactions consummated after October 9, 1970. Sec. 138.06 (3), Stats., provides:

"(3) Any borrower who paid interest on a loan or forbearance at a rate greater than the rate allowed in s. 138.05 may by himself or his personal representative recover in an action against the lender or his personal representative the amount of interest, principal and charges paid on such loan or forbearance but not more than $2,000 of principal, if such action is brought within 2 years after such excessive interest has been paid."

The defendants argue that the effect of that statute as it has always existed is to bar all class actions for usurious interest—that it permits an action only when brought by the borrower himself or his personal representative. Defendant also argues that the allowance of class actions to recover usury penalties is contrary to public policy.

We conclude that sec. 138.06 (3), Stats., does not bar class actions and that such actions are not contrary to the public interest.

The court has been substantially assisted by the able analysis and discussion of the trial judge in his memorandum decision. Therein he concluded that the authorities relied upon by the defendants are archaic and do not reflect the business realities of modern revolving credit practices, but deal only with nineteenth century arm's-length transactions. He pointed out that behind the old cases was the rather quaint theory that a contract, even for usurious interest, ought not to be avoided, because there was something not quite honorable in such avoidance, even though the statute made the interest charges illegal. He contrasted the face-to-face good-faith bargains, even for usurious interest, that might have been struck between a borrower and lender under these older cases and the anomalous bargain struck by a present-day user of a revolving credit account, where there is no meaningful or subjective acceptance of a usurious interest rate. Nevertheless, as the trial judge pointed out, all of these cases do recognize the right to recover and to secure penalties as the result of usurious interest exactions. They merely seem to indicate that, if the mulcted borrower is going to indulge in the somewhat dishonorable practice of avoiding a contract into which he entered, he must assume the "dishonor" personally and cannot escape the onus by the utilization of a class action.

In this opinion, we but capsulize the exhaustive historical, social, and legal analysis of Judge BARDWELL. Suffice it to say that the cases he analyzed, and which are relied upon by the defendants, are not consonant with the concepts of a modern economy and the legislatively recognized principles of consumer protection.

As we stated in State v. J. C. Penney Co., supra, page 153, the widespread practice of usury by the medium of revolving credit accounts constitutes "a public nuisance." It therefore cannot be said that a usurious transaction is only a matter of concern to the individual party who

may have been injured by a particular transaction. Wisconsin cases that so hold and that, therefore, by implication ban class actions for the recovery of usury are no longer valid, if indeed they ever were. We do not expressly overrule them, because certain types of usurious credit transactions may be of a nature that is so particularized or individualized that class action remedies in any case would be inappropriate. Those cases, however, do not control the situation as set forth herein.

Quite aside from precedent, archaic or otherwise, the defendant relies on sec. 138.06 (3), Stats., which states in part a "borrower . . . may by himself or his personal representative recover in an action against the lender . . . ." It is argued that this statute should continue to be interpreted to limit the right of instituting action only to the person actually borrowing the money or who is in a representative capacity, such as an executor or administrator of an estate. Not only do we conclude that such strict interpretation flies in the teeth of *State v. J. C. Penney Co., supra,* which pointed out that a larger interest than just that of the individual was involved, but moreover it is contrary to a holding of this court which has interpreted a similar statute to permit a class action.

In *Peters v. International Harvester Co.* (1946), 248 Wis. 451, 22 N. W. 2d 518, this court found a class action to be proper where it was brought by a single employee on behalf of all of a class of 104 employees against their employer to recover sums illegally deducted from their pay. The class action in that case was permitted to proceed despite the fact that the statute provided only for a "civil action brought by said employee." *Peters,* page 453, footnote 1.

While the objection therein was not specifically made in respect to the impropriety of a class action, the court went out of its way to unanimously assert:

"The allegation of common interest is made to bring the case within the provision of sec. 260.12, Stats., that 'when the question is one of a common or general interest of many persons . . . one or more may sue . . . for the benefit of the whole.' We think the case is within the statute, and that the motion was properly denied as to the hundred four persons named . . . ." *Peters,* page 455.

We accordingly conclude, consistent with the trial court's reasoning set forth above and with the holding of *Peters,* that the statute is not to be interpreted to prohibit class actions for the recovery of usurious exactions.

It also seems clear that class actions of this type are not, when large scale usurious transactions have been labeled a public nuisance, contrary to public policy. True, we did, in *Wiener v. J. C. Penney Co., supra,* recognize the public policy declaration of the legislature in enacting sec. 138.06 (6) and (7), Stats., which effectively prevented other than personal actions for pre-*State v. J. C. Penney Co.* usurious transactions. We sharply distinguished those pre-*State v. J. C. Penney Co.* transactions from those that might come afterwards. We recognized the legislature's concern that the large scale recoupment of usurious interest charges, together with the statutory penalties, might result in widespread bankruptcies among retailers who, in good faith, charged interest rates that were only later determined to be usurious rather than to be legitimate time-price differentials. Such good faith, however, is not recognized by the statutes for transactions that occurred subsequent to our decision finding that revolving credit accounts were subject to the strictures of the usury laws. We said in *Wiener v. J. C. Penney Co., supra,* page 149:

"The legislature might therefore have reasonably concluded that until *Penney* Wisconsin retailers offered

their credit plans in good faith and therefore should not be subject to severe penalties.

". . . After the *Penney* decision was announced on October 9, 1970, all retailers in the state were effectively put on notice that the usury law applied to revolving charge accounts. Any further violations could not be considered in good faith, and thus the new legislation only limits liability for pre-October 9, 1970, claims."

Therefore, the argument of the defendant that the allowance of a class action in cases of this kind would cause violators to be put out of business and class actions are contrary to public policy cannot be given any weight when the violators have had sufficient notice by *State v. J. C. Penney Co.* and the legislation that followed that they could no longer rely on their good faith or their ignorance of the effect of the usury law. The cause of action brought here on behalf of over 500 Wisconsin residents is not contrary to the public policy.

It is also argued that a class action is not appropriate, because it would be inefficient and would require the exploration of numerous individual transactions involving different rates of interest depending on the promptness of payment, the size of the purchases, and the accrued accounts. However, this argument was dealt with in the recent case of *Schlosser v. Allis-Chalmers Corp.* (1974), 65 Wis. 2d 153, 222 N. W. 2d 156, which permitted class actions, although the class was composed of persons who had entered into individual contracts at different times. We said in *Schlosser*, page 175:

". . . there is no theoretical or practical reason why class actions for damages may not be maintained where, under the facts of the case, a simplification of the lawsuit would result and a multiplicity of litigation could be avoided. A class action may not be appropriate if each class member would have to appear and testify individually about a complex and disputed set of facts unique to him, in order to establish his right to recover. Little time economy would be achieved. On the other

hand where, as here, the questions individual to each class member are simple and would require little individual participation, there is no reason why a class action would not be appropriate. The question as to which of these situations was present in a given action would, of course, have to be decided by the trial court after a careful review of the facts."

In *Schlosser*, we concluded that it was in the public interest as declared by the legislature to permit class actions in those cases which meet the criteria established by sec. 260.12, Stats. The criteria were summarized in *Schlosser*, page 169:

"(1) The named parties 'must have a right or interest in common with the persons represented;' (2) the named parties 'must fairly represent the interest or right involved so that the issue may be fairly and honestly tried;' and (3) it must be 'impracticable to bring all interested persons before the court.'"

We conclude that the pending action meets these criteria in *Schlosser*, that sec. 138.06 (3), Stats., does not prohibit class actions for the recovery of usurious payments, and that the use of the class-action device for the recovery of usurious exactions is not against the public interest.

The trial judge properly overruled the demurrer.

*By the Court.*—Order affirmed.